## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Zohar III, Corp., *et al.*,[1] | ) | Case No. 18-10512 (KBO) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| ——————————————— | ) | |
| | ) | |
| MBIA INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. Proc. No. 20-50776 (KBO) |
| LYNN TILTON; PATRIARCH | ) | |
| PARTNERS, LLC; PATRIARCH | ) | |
| PARTNERS VIII, LLC; PATRIARCH | ) | |
| PARTNERS XIV, LLC; | ) | |
| PATRIARCH PARTNERS XV, LLC; | ) | |
| PATRIARCH PARTNERS AGENCY | ) | |
| SERVICES, LLC; PATRIARCH | ) | |
| PARTNERS MANAGEMENT GROUP, | ) | |
| LLC; OCTALUNA LLC; OCTALUNA II | ) | |
| LLC; ARK II CLO 2001-1, LLC; ARK | ) | |
| INVESTMENT PARTNERS II, LP; LD | ) | |
| INVESTMENTS, LLC; ZOHAR | ) | |
| HOLDING, LLC; and ZOHAR | ) | |
| HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| ——————————————— | ) | |

### MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART
### THE PATRIARCH DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Before the Court are the Defendants on their motion to dismiss (the "<u>Motion to Dismiss</u>") the Complaint of Plaintiff MBIA Insurance Corporation ("<u>MBIA</u>") under Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), made applicable to this adversary proceeding by Rules 7008 and 7012 of the Federal Rules of Bankruptcy Procedure (the

---

[1] The Debtors, and, where applicable, the last four digits of their taxpayer identification number are as follows: Zohar III, Corp. (9612), Zohar II 2005-1, Corp. (4059), Zohar CDO 2003-1, Corp. (3724), Zohar III, Limited (9261), Zohar II 2005-1, Limited (8297), and Zohar CDO 2003-1, Limited (5119). The Debtors' address is 3 Times Square, c/o FTI Consulting, Inc., New York, NY 10036.

"<u>Bankruptcy Rules</u>").  The Court, having considered the briefing submitted by the parties on the Motion to Dismiss and determined that its decision-making process would not be aided by oral argument, finds and orders as follows:

## I.    JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).  Venue is proper pursuant to 28 U.S.C. § 1409(a).

## II.    PROCEDURAL HISTORY

MBIA filed the Complaint against the Defendants on July 30, 2020.[2]  The Complaint followed one involving substantially similar allegations and claims raised against many of the same defendants by debtors Zohar CDO 2003-1, Limited ("<u>Zohar I</u>"), Zohar II 2005-1, Limited ("<u>Zohar II</u>"), and Zohar III, Limited ("<u>Zohar III</u>" and, together with Zohar I and Zohar II, the "<u>Zohar Funds</u>") in the proceeding styled *Zohar CDO 2003-1 v. Patriarch Partners, LLC (In re Zohar III, Corp.)*, Adv. Proc. No. 20-50534 (the "<u>Zohar Adversary</u>").  On June 18, 2021, the Court rendered a ruling in that adversary on a motion to dismiss.[3]  In this proceeding, briefing on the Motion to Dismiss was complete January 15, 2021[4] but remained sealed until April 2021 when the parties completed the filing of redacted versions.[5]  The matter is ripe for adjudication.

## III.    SUMMARY OF ALLEGED FACTS

### A.    Zohar, MBIA, and Tilton

MBIA is an insurance company that guaranteed the payments of interest and principal to certain senior Class A noteholders of Zohar I and Zohar II (together, the "<u>Zohar Issuers</u>").[6]  The Zohar Issuers' notes (comprised of class A-1, A-2, A-3, and B notes) (the "<u>Zohar Notes</u>") obligated the Zohar Issuers to pay their noteholders interest periodically and to redeem them in full on their maturity date.[7]  The maturity date for the Zohar I Class A Notes, issued in the amount of $532 million, was November 20, 2015.[8]  The Zohar II Class A Notes, issued in the amount of $1 billion, matured January 20, 2017.[9]  MBIA's insurance policies guaranteed payments to the holders of Zohar I Class A-1 and A-2 Notes and the Zohar II Class A-1, A-2, and A-3 Notes (collectively,

---

[2] Adv. D.I. 1 ("<u>Compl.</u>").  MBIA voluntarily dismissed Zohar Holdings, LLC.  *See* Adv. D.I. 45.

[3] *See Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, No. 20-50534, 2021 WL 2495146 (Bankr. D. Del. June 18, 2021).

[4] Adv. D.I. 25, 26, 46, 50, 52.

[5] Adv. D.I. 62, 66-69

[6] Compl. ¶¶ 2, 7.

[7] *Id*. ¶¶ 30-31.

[8] *Id*. ¶ 30.

[9] *Id*. ¶ 31.

the "Noteholders") if the Zohar Issuers defaulted at the respective note maturity dates.[10]  Zohar III also issued notes but MBIA did not insure them.

The Zohar Issuers issued the Zohar Notes in connection with the formation and capitalization of the Zohar Funds, three investment funds structured as collateralized loan obligations.[11]  Lynn Tilton ("Tilton") created and controlled the Zohar Funds.[12]  Each Zohar Fund sold notes to investors and used the proceeds to, among other things, make or acquire loans to, and obtain equity interests in, a portfolio of corporate borrowers (the "Portfolio Companies").[13]  The revenue generated by these assets was to repay the Zohar Funds' note obligations.[14]  Zohar I and Zohar II own, or in the past owned, membership interests in at least fifteen limited liability Portfolio Companies and stock in at least twenty-three corporate Portfolio Companies.[15]

Tilton owns and controls the other Defendants.  Together, they managed and controlled the Zohar Funds and the Portfolio Companies.[16]  Tilton was manager, director, and/or officer of the Portfolio Companies.[17]  Patriarch VIII, LLC ("Patriarch VIII") and Patriarch XIV, LLC ("Patriarch XIV" and, together with Patriarch VIII, the "Patriarch Managers") served as collateral managers for Zohar I and Zohar II respectively.[18]  They were tasked with carrying out day-to-day operations and functions for the Zohar Issuers, including managing their loans to and equity interests in the Portfolio Companies.[19]  Patriarch Partners Agency Services, LLC ("PPAS") served as the administrative agent for the Zohar Funds under the various credit agreements between the Zohar Funds and the Portfolio Companies (the "Credit Agreements").[20]  Patriarch Partners Management Group, LLC ("PPMG") purportedly provided management and consulting services to the Portfolio Companies.[21]  Octaluna I, LLC and Octaluna II, LLC (together, the "Octaluna Entities") held the preference shares of Zohar I and Zohar II, respectively.[22]

---

[10] *Id.* ¶¶ 2, 7, 67-68.

[11] *Id.* ¶ 2.

[12] *Id.*

[13] *Id.* ¶ 3.

[14] *Id.* ¶ 4.

[15] *Id.* ¶¶ 75-77.

[16] *Id.* ¶¶ 8-9, 14.

[17] *Id.* ¶ 183.

[18] *Id.* ¶¶ 8, 11-12.

[19] *Id.* ¶¶ 8, 34.

[20] *Id.* ¶ 14.

[21] *Id.* ¶ 15.

[22] *Id.* ¶¶ 16-17.

###### B.    The Governing Documents

A set of agreements for each Zohar Issuer governed the parties' obligations.  A set included an indenture, a collateral management agreement, an insurance and indemnity agreement, the financial guaranty insurance policy, and the applicable Zohar Notes (together, the "Transaction Documents").[23]   Under these documents, the Zohar Issuers were to maximize recoveries on account of their assets to facilitate repayment of the noteholders' investment.[24]

The indentures (the "Indentures") principally governed the rights and obligations attendant to the Zohar Issuers and the Zohar Notes.  Each was entered into by, among others, Zohar I or Zohar II, MBIA, note agents, and a trustee.[25]   Among other things, the Indentures set forth the Zohar Issuers' payment obligations on the Zohar Notes and instructions governing the order of repayment.[26]   To secure payment of the obligations, the Zohar Issuers granted to the trustee a security interest and lien on their rights, title, and interests in all assets and property owned.[27]   To protect and preserve the collateral, the Indentures include covenants that restrict various actions of the Zohar Issuers, such as collateral sales or lien impairment.[28]

The Indentures further provide for the existence of the collateral managers and set forth rights and obligations with respect thereto, including the managers' responsibilities to take actions necessary to secure the rights and remedies of MBIA and the noteholders under the Indentures and to preserve and defend the Zohar Funds' rights in and title to their assets for the benefit of such parties.[29]   The Patriarch Managers served as collateral managers for the Zohar Issuers pursuant to collateral management agreements (the "CMAs"), which also set forth their obligations and authority for the Zohar Issuers.[30]   MBIA was not a party to the CMAs, but it was an express third-party beneficiary.[31]   The CMAs required the Patriarch Managers to comply with the Indentures and also independently restricted actions with respect to the Zohar Issuers and their property.[32]

---

[23] *Id*. ¶ 32.

[24] *Id*. ¶ 42.

[25] *Id*. ¶ 33.

[26] *Id*. ¶¶ 42-45 (describing the payment waterfalls under the Indentures for interest and principal proceeds).

[27] *Id*. ¶¶ 35-36 (describing the "Collateral" under the Indentures).

[28] *Id*. ¶ 38.

[29] *Id*. ¶ 39.

[30] *Id*. ¶¶ 52, 54.

[31] *Id*. ¶ 53.

[32] *Id*. ¶¶ 56-65.

### C.     The Zohar Issuers Default and MBIA Pays

At their respective maturities, the Zohar Issuers defaulted on the Zohar Notes.  Thereafter, MBIA made insurance payments in the approximate amount of $149 million[33] and $770 million[34] for the benefit of the Noteholders.  It became subrogated to the rights of the Noteholders and received the right to priority repayment under the Indenture.[35]  It also became empowered under the Transaction Documents to, among other things, remove the Patriarch Managers as collateral managers and direct the sale of the Zohar Issuers' assets.[36]

### D.     The Defendants Caused the Defaults and MBIA's Loss

Despite its rights and remedies, MBIA has been unable to recover its losses and damages estimated at $1 billion.[37]  MBIA blames Tilton.  It believes that the Defendants took a series of actions that aggregate to form a collective scheme designed by Tilton to enrich herself at the expense of the Zohar Funds, the noteholders, the Portfolio Companies, and MBIA, by controlling the Zohar Funds and Portfolio Companies, depriving them of sufficient assets to repay loan obligations, and obstructing the exercise of rights and remedies to prevent, stop, or remedy the resulting harm.  MBIA alleges that the Defendants engaged in a "years-long pattern of fraud, self-dealing, and gross mismanagement" and systematically looted the assets of the Zohar Funds.[38]  It contends that the Zohar Funds failed as a result, triggering MBIA's insurance obligations and causing significant damages that it could never recover.[39]  In support, MBIA alleges five categories of misconduct that led to the Zohar Funds' defaults and its losses.

*First*, the Defendants used the Zohar Funds' assets to acquire controlling equity interests in the Portfolio Companies and then took and controlled such interests to profit at the knowing expense of the Zohar Issuers and their noteholders.[40]  MBIA alleges numerous examples.

With defaults looming on the Zohar I notes, the Patriarch Managers, on behalf of the Zohar Issuers, executed irrevocable proxies and shareholder agreements (the "Shareholder Conveyances") for corporate Portfolio Companies that transferred to the Defendants the Zohar Issuers' equity voting and control rights in the companies.[41]  As a result, the Zohar Issuers could no longer exercise their voting rights at stockholder meetings, appoint, elect, or remove directors,

---

[33] *Id*. ¶¶ 145-47 (describing Zohar I's note payment default).

[34] *Id*. ¶¶ 167-69 (describing Zohar II's note payment default).

[35] *Id*. ¶¶ 42-45, 49.

[36] *Id*. ¶¶ 48, 70.

[37] *Id*. ¶ 1.

[38] *Id*.

[39] *Id*.

[40] *Id*. ¶¶ 5, 74.

[41] *Id*. ¶¶ 81-83.

or amend the articles or certificates of incorporation and by-laws.[42]   Around the same time, the Patriarch Managers, on behalf of the Zohar Issuers, also amended limited liability company agreements (the "LLC Conveyances" and together with the Shareholder Conveyances, the "Governance Conveyances") to transfer similar voting and control rights to the Defendants for limited liability Portfolio Companies.[43]   About two years later, Tilton as manager executed written consents (the "November 2017 Written Consents") on behalf of three limited liability Portfolio Companies that created and granted to the Octaluna Entities new preference interests with the exclusive right to replace Tilton as manager and amend the limited liability company agreements.[44]   While the Octaluna Entities purportedly contributed $23 million for the interests, they became entitled to a priority payout worth five times as much.[45]

It is alleged that the Defendants also refused to sell the Zohar Issuers' equity and took dividends and other distributions made on account of the interests.[46]   They caused the Portfolio Companies to pay management fees to Tilton and her affiliates, including excessive amounts to PPMG on account of purported management and consulting services.[47]   And they caused the Portfolio Companies to enter into so-called "phantom equity agreements" giving Tilton the right to certain "Change of Control" payments prior to the Zohar Funds.[48]

**Second**, the Defendants modified the Portfolio Companies' loan obligations to the Zohar Issuers.[49]   Modifications included reducing interest rates, waiving interest payments and defaults, restructuring outstanding fees and interest to principal, subordinating the Zohar Funds' liens on collateral in favor of Tilton's affiliates, eliminating covenants and restrictions, and extending principal payment deadlines.[50]   The Zohar Issuers received no consideration for these alterations.[51]   Moreover, MBIA alleges that they had no legitimate business justification.[52]   Rather, they hid the poor performance of the loans and avoided events of default.[53]

---

[42] *Id.*

[43] *Id.* ¶ 85.

[44] *Id.* ¶ 87.

[45] *Id.*

[46] *Id.* ¶¶ 90, 94-103.

[47] *Id.* ¶¶ 91-93.

[48] *Id.* ¶ 179.

[49] *Id.* ¶¶ 5, 74, 97, 99.

[50] *Id.* ¶¶ 5, 104-21.

[51] *Id.*

[52] *Id.*

[53] *Id.*

**Third**, the Defendants used the assets of Zohar II to make unauthorized loans to the Portfolio Companies,[54] intercepted loan repayments,[55] and, on the eve of the Patriarch Managers ouster as collateral managers, caused PPAS to draw all available amounts under certain Credit Agreements without knowledge or need of the corresponding Portfolio Companies.[56]   The funds never went to the companies, and their whereabouts are unknown.[57]

**Fourth**, the Defendants categorized as performing certain non-performing loans, defaulted loans, and loans subject to a restructuring.   They then used the improper categorizations to miscalculate the Indentures' mathematical formula referred to as the "Overcollateralization Ratio" (the "OC Test").[58]   The OC Test measured the likelihood that the Zohar Issuers had sufficient liquidity to satisfy their payment obligations on the Zohar Notes.[59]   If the OC Test determined that the Zohar Issuers' assets were more than sufficient to repay noteholders, the resulting "overcollateralization" avoided an event of default.[60]

**Fifth and finally**, after the Zohar Issuers defaulted on the Zohar Notes and MBIA paid, the Defendants obstructed MBIA's efforts to recover its losses.[61]   Among other things, Tilton caused the commencement of involuntary chapter 11 bankruptcy proceedings against Zohar I and two of its affiliates (the "Zohar I Involuntary Proceeding").[62]   MBIA believes that the filing had no legitimate purpose and just served to prevent it from, among other things, removing the Patriarch Managers from control of Zohar I and forcing a sale of its collateral.[63]   Ultimately, after an evidentiary hearing addressing whether the Zohar I Involuntary Proceeding was properly commenced, the Patriarch Managers resigned as collateral managers for each Zohar Fund, the bankruptcy petitions were withdrawn, and the Zohar I Involuntary Proceeding dismissed.[64]

Following the Patriarch Managers' resignations and the start of non-Tilton control of the Zohar Funds, access to books and records relating to the Zohar Funds and their assets was denied. Basic information such as an inventory of assets (including equity holdings) was withheld, causing litigation in the Delaware Court of Chancery.[65]   Moreover, when the Zohar Issuers tried to replace

---

[54] *Id*. ¶¶ 124-26.

[55] *Id*. ¶ 127.

[56] *Id*. ¶¶ 127-30.

[57] *Id*. ¶ 131.

[58] *Id*. ¶¶ 5, 74, 133-44.

[59] *Id*. ¶ 139.

[60] *Id*. ¶¶ 139-40.

[61] *Id*. ¶ 5.

[62] *Id*. ¶ 148.

[63] *Id*. ¶¶ 149-52.

[64] *Id*. ¶ 153.

[65] *Id*. ¶ 157.

PPAS as administrative agent on the Portfolio Company loans, PPAS refused to step down and cooperate with MBIA and the Zohar Issuers as they tried to control and monetize the loans.[66]

The Defendants' obstruction continued when MBIA tried to liquidate some of its collateral and coordinate the auction of Zohar I's assets. Tilton modified the tax structure of the Zohar Funds so that they became taxable entities, attempted to enjoin the auction, and prevented the transfer of Portfolio Company equity interests to MBIA after it prevailed as the winning bidder by refusing to consent and claiming beneficial ownership.[67]

The Defendants' claim to own and control the equity interests in the Portfolio Companies led to more litigation before the Delaware Chancery Court when Zohar II and Zohar III sought assistance in exercising their rights as shareholders to name directors in three corporate Portfolio Companies.[68] Tilton defended and pursued counterclaims in the action (the "Delaware 225 Action") based on her claim of ownership but was ultimately unsuccessful.[69] The parties then commenced five additional state court actions around the country to resolve similar ownership and management disputes at seventeen more Portfolio Companies.[70]

Ultimately, Tilton, acting as preference shareholder, took back control of the Zohar Funds, commenced the Zohar Funds' bankruptcy cases, stayed all pending litigation (including her appeal of the Delaware 225 Action judgment), and used loan interest payments from the Portfolio Companies to fund the bankruptcies and actions adverse to MBIA.[71]

MBIA alleges that these and other actions detailed in the Complaint siphoned assets and value away from the Portfolio Companies, the Zohar Issuers, and by extension, it and the noteholders. The financial performance of the Portfolio Companies suffered, and the efforts of the Zohar Funds, their noteholders, and MBIA to stop, prevent, and mitigate the harm were frustrated.

## IV.    APPLICABLE LEGAL STANDARD

Federal Rule 8(a)(2), made applicable to this proceeding by Bankruptcy Rule 7008, provides that to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[72] This rule imposes a "notice pleading standard . . . to give the defendant fair notice of what the claim is and the grounds upon which it rests."[73] While detailed facts are not necessary, "a plaintiff is required to put the defendant on

---

[66] *Id.* ¶ 158.

[67] *Id.* ¶¶ 160-66.

[68] *Id.* ¶¶ 172-74.

[69] *Id.*

[70] *Id.* ¶ 176.

[71] *Id.* ¶¶ 171, 177-78, 180.

[72] FED. R. CIV. P. 8(a).

[73] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

notice as to the basics of the plaintiff's complaint [and] to set forth the facts with sufficient particularity to apprise the defendant fairly of the charges made against him so that he can prepare an adequate answer."[74]

When reviewing a motion to dismiss under Federal Rule 12(b)(6) challenging the sufficiency of a plaintiff's statement of claim, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."[75]  This is a plausibility standard – it requires more than a sheer possibility that a defendant acted unlawfully but is not akin to a probability standard.[76]  Rather, a plaintiff must allege sufficient facts to nudge the claims "across the line from conceivable to plausible[.]"[77]

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of will not do[.]"[78]  Therefore, "the tenet that a court must accept as true all factual allegations contained in a complaint is inapplicable to legal conclusions."[79]  Thus, a plaintiff's threadbare recitals of a cause of action that are only supported by conclusory statements will not suffice.[80]

The United States Court of Appeals for the Third Circuit in *Burtch v. Milberg Factors, Inc.* prescribed a three-step process for courts to determine the sufficiency of a complaint - first, note the elements of the claim; second, identify the allegations that are conclusory and thus not entitled to an assumption of truth; and third, assume the veracity of well-pleaded factual allegations and determine the plausibility of the plaintiff's entitlement to relief.[81]

While a court may draw from "judicial experience and common sense" in considering a motion to dismiss,[82] it must only consider alleged facts that are within the scope of the court's review.[83]  The scope of what is reviewable includes the complaint, public record, and documents

---

[74] *In re Lexington Healthcare Grp., Inc.*, 339 B.R. 570, 575 (Bankr. D. Del. 2006); *see also In re APF Co.*, 308 B.R. 183, 188 (Bankr. D. Del. 2004); *Mervyn's LLC v. Lubert-Adler Group IV, LLC (In re Mervyn's Holdings, LLC)*, 426 B.R. 488, 495 (Bankr. D. Del. 2010).

[75] *Crystallex Int'l Corp. v Petrolesos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018) (quoting *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015)).

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007).

[77] *Twombly*, 550 U.S. at 570.

[78] *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (internal citation omitted).

[79] *Iqbal*, 556 U.S. at 678.

[80] *Id.*

[81] 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

[82] *Iqbal*, 556 U.S. at 679.

[83] *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016); *see also Schmidt v. Skolas*, 770 F.3d 241, 249

that are "integral to or explicitly relied upon" by a plaintiff, such as documents attached to a complaint and any undisputedly authentic documents upon which the claims are based.[84]  Rather than being a mini trial for parties to put forth their whole case and competing viewpoints of what the ultimate outcome should be, a motion to dismiss focuses solely on the narrow and fundamental question of whether, if everything the plaintiff alleges is true, the plaintiff can prevail.[85]

## V.   LEGAL DISCUSSION

The Defendants move to dismiss the Complaint for a variety of reasons.  For the most part, they challenge each claim as either not properly pled under the requirements of Federal Rule 8(a) or not sustainable as a matter of law.  However, as a threshold matter, they ask the Court to dismiss the Complaint as duplicative of the Zohar Adversary.  The Court will address this issue first and then the arguments applicable to each claim.[86]

### A.   The Claim-Splitting Doctrine (Entire Complaint)

The Defendants move to dismiss MBIA's Complaint as duplicative of the Zohar Adversary.  They argue that MBIA is proceeding against the same defendants, on the same or similar facts and agreements, asserting largely the same or similar legal theories, and seeking largely the same or similar relief.  Furthermore, they assert that the Zohar Funds adequately represent the interests of MBIA in the Zohar Adversary given that, among other things, the purpose of the proceeding is to benefit MBIA and the noteholders.[87]  Accordingly, they contend that the "claim splitting" doctrine is implicated and requires dismissal.

The United States Supreme Court has recognized the claim splitting doctrine for well over one hundred years.[88]  It is "known as the 'rule against duplicative litigation'"[89] and stems from the *res judicata* doctrine where, just as a plaintiff may not pursue another action after final adjudication, a plaintiff may not pursue its claims arising out of a single wrong piece by piece in

---

(3d Cir. 2014).

[84] *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018); *see also McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Davis*, 824 F.3d at 341.

[85] *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[86]  The Court attempted to take all arguments into account when reaching its conclusions.  It addresses herein only those arguments that raise significant concern and rejects all others.

[87] *See, e.g.*, Zohar Adversary, D.I. 2 (Complaint) ¶ 9 ("[T]he Court should avoid the improper transfers and obligations . . . incurred or made for the benefit of Tilton and her affiliates, so that the Zohar Funds may . . . satisfy the notes purchased by their third-party noteholders, as the Zohar Funds promised to do when they were formed by Tilton to borrow $2.5 billion and issue $2.5 billion notes from 2003 to 2007.")

[88] *U.S. v. Haytian Republic*, 154 U.S. 118 (1894) ("[T]he true test of the sufficiency of a plea of 'other suit pending' in another forum was the legal efficacy of the first suit, when finally disposed of, as 'the thing adjudged,' regarding the matters at issue in the second suit.").

[89] *Leonard v. Stemtech Intern., Inc.*, No. 12-86-LPS-CJB, 2012 WL 3655512, *5 (D. Del. Aug. 24, 2012) (*quoting Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 08-309-JJF-LPS, 2009 WL 2016436, at *3 (D. Del. July 9, 2009)).

suits pending at the same time.[90]   This is to, among other things, foster judicial economy, avoid harassment of litigants, and prevent a plaintiff from gaining a litigation advantage.[91]

To determine whether a complaint duplicates another and triggers the claim splitting doctrine, courts tend to apply a modified version of the test for *res judicata*.[92]   Specifically, claim splitting may apply in cases involving the same parties or their privies and arising out of the same transaction or occurrence.[93]   Differences between two suits may not avoid the doctrine's application if the complaints are substantially identical and the differences "purely semantic."[94]

If a court determines that duplicative litigation is present, it has discretion to fashion a remedy.[95]   The dismissal or stay of a subsequently filed identical action may be appropriate.[96]   However, a court may also choose to consolidate the matters if such approach presents "the most administratively efficient procedure."[97]

Similar to the theory proffered in the Zohar Adversary by the Zohar Funds, MBIA advances a thesis through the Complaint that Tilton and her affiliates engaged in a series of actions designed to entrench themselves in positions of control and extract as much value as possible.  Its Complaint arises out of a substantially similar set of operative facts, documents, and wrongdoing allegedly performed by substantially the same defendants as the Zohar Adversary.  It also alleges claims of breach of contract, tortious interference, breach of fiduciary duty, conversion, unjust enrichment, and declaratory judgment just as the Zohar Funds pursue.  Notwithstanding, MBIA argues that its proceeding does not implicate the claim splitting doctrine because it is pursuing its own rights and

---

[90] *Id.* at *5 (relying on *Sensormatic Sec. Corp. v. Sensormatic Electr. Corp.*, 329 F. Supp. 2d 574, 578-79 (D. Md. 2004)).

[91] *See Walton v. Eaton Corp.*, 563 F.2d 66, 70-71 (3d Cir. 1977).

[92] *See, e.g.*, *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841 (11th Cir. 2017); *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1365 (7th Cir. 1988); *Davis v. Sun Oil Co.*, 148 F.3d 606, 613 (6th Cir. 1998); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *Adams v. Cal. Dept. of Health Servs.*, 487 F.3d 684, 688-89 (9th Cir. 2007) (*overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008)); *Beckerley v. Alorica, Inc.*, 2014 WL 4670229, at *4 (C.D. Cal. Sept. 17, 2014).

[93] *See, e.g.*, *Leonard*, No. 12-86-LPS-CJB, 2012 WL 3655512, at *8 ("[I]f the second-filed lawsuit not only involves the same defendant and the same (or similar) legal claims as does the first suit, but also arises out of the same set of operative facts as alleged in the first suit, then the second suit is likely an example of improper claim splitting."); *McKenna v. City of Philadelphia*, 304 F. App'x 89, 92 (3d Cir. 2008) (explaining that the claim splitting doctrine applies "when two cases: (1) take place in the same court; (2) with the same defendants; (3) involving the same subject matter."); *Sensormatic Sec. Corp.*, 329 F. Supp. 2d at 579 (holding that a "second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." (quoting *Trustmark Insur. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002)).

[94] *Leonard*, No. 12-86-LPS-CJB, 2012 WL 3655512, at *6 (relying on and quoting *McKenna*, 304 F. App'x at 92).

[95] *Walton*, 563 F.2d at 70-71.

[96] *Id.* at 70.

[97] *Id.* at 71.

remedies distinct from the Zohar Funds as either a Noteholder, insurer with priority payment rights, or owner of Zohar I's collateral. Moreover, it points out differences between the injuries suffered by the Zohar Funds and itself and the differing relief sought.

The Court will not dismiss MBIA's Complaint as duplicative. As an initial matter, it is difficult to determine the extent of overlap between this proceeding and the Zohar Adversary because dismissal with leave to amend is warranted for many of MBIA's claims. Among other things, further clarification is required to understand MBIA's legal and factual theories underpinning its distinct rights of recovery on several claims that appear derivative of the Zohar Funds' rights and claims. Without a more defined scope of this proceeding, it would be premature for the Court to analyze the application of the claim splitting doctrine.

Following amendment however, even if the Court found some claims duplicative and the existence of privity between MBIA and the Zohar Funds, the presence of additional Defendants (namely, LD Investments, LLC ("LDI"), Zohar Holding, LLC ("Zohar Holding"), and Patriarch Partners, LLC ("Patriarch Partners")) and claims (such as malicious prosecution, alter ego, and tortious interference with insurance agreements) would support the consolidation of this proceeding with the Zohar Adversary rather than dismissal.[98] At the appropriate time, the Court will discuss with the parties consolidation and other case management procedures, such as coordinated discovery, to ensure that the cases proceed in an efficient and economical fashion.

## B.    Breach of Contract (Count I)

Count I is MBIA's claim against the Patriarch Managers for breach of the CMAs. MBIA alleges that the Patriarch Managers breached their obligations to monitor and manage the Zohar Funds' assets in accordance with the terms and standards of care set forth in the CMAs.[99] To that end, the Complaint details several obligations and requirements of the CMAs that the Patriarch Managers failed to fulfill, including to exercise powers in accordance with the Indentures, not act intentionally in a manner known to cause a default under the Indenture, and not to take any action which they knew or should be reasonably expected to know in accordance with prevailing market practices would cause the Zohar Funds to violate the Indentures, adversely affect the interests of the noteholders in any material aspect, or violate the law.[100] The Complaint also provides six categories of wrongful breaching conduct.[101] According to MBIA, the breaches caused the Zohar Funds to default on the Zohar Notes, forced MBIA to satisfy its guarantee obligations and incur substantial costs and expenses, and prevented it from mitigating its damages.[102]

---

[98] *See id.* (explaining that if a second complaint contains some new matters, consolidation avoids two trials on closely related matters and causes no harm with respect to the identical matters so long as the court oversees the matter to avoid procedural advantages).

[99] Compl. ¶¶ 188-190.

[100] *Id.* ¶¶ 189-90.

[101] *Id.* ¶ 191.

[102] *Id.* ¶ 192.

The Defendants seek to dismiss the breach of contract claim for MBIA's failure to plead with sufficient specificity. They also argue that the claim fails as a matter of law for a variety of reasons, including that the CMAs limit their liability and that some of the issues are precluded.[103]

### 1.    Insufficient Pleading

The Defendants argue that the allegations of Count I are too vague for them to determine which actions violated the CMAs. Specifically, they take issue with MBIA's use of general categories to describe the Patriarch Managers' wrongful conduct and its reliance on the specific facts incorporated into Count I from the prior 186 paragraphs of the Complaint's common allegations. In defense of its pleading, MBIA contends that the Complaint provides more than adequate notice of and sufficient detail regarding the grounds for its breach of contract claim, especially in light of the categories provided in Count I that provide a link to the Complaint's more specific descriptions of wrongdoing. The Court agrees with MBIA.

In Count I, MBIA notes the contracts at issue and details the specific provisions thereof allegedly breached by the Patriarch Managers. It then details in paragraph 191 the six categories of actions that the Patriarch Managers took that breached such provisions:

> (a)    executing or amending terms of the Credit Agreements for the sole intended benefit of the Patriarch Manager Defendants or their affiliates . . . to the detriment of the Insured Zohar Funds, the noteholders and MBIA, including by deferring and forgiving loan interest payments and fees . . ., and undermining the Zohar Funds' ability to take remedial action to address Portfolio Companies' loan defaults by modifying loan conditions and requirements, waiving defaults themselves and subordinating the Insured Zohar Funds' lien positions;

> (b)    miscategorizing non-performing "Category 1" loans as performing "Category 4" loans and miscalculating the Overcollateralization Ratio to ensure the continued wrongful payment of management fees;

> (c)    funding new loan commitments without MBIA's authorization;

> (d)    extending the principal repayment date of the loans made by the Insured Zohar Funds to the Portfolio Companies beyond

---

[103] The Defendants raise a series of other arguments for dismissal of MBIA's contract claims related to the Credit Agreement amendments and related actions, the funding of new loan commitments, the payment management fees, the distribution of sales proceeds, the failure to equitize equity interests, and self-dealing transactions, all of which the Court rejects as bases for dismissal at this initial pleading stage. *See infra* note 111 and accompanying text.

the Zohar Note Maturity Dates and in violation of Section 12.1(a)(2) of the Indentures;

(e)    refusing to monetize equity interests in the Portfolio Companies owned by the Insured Zohar Funds and diverting to themselves proceeds from the Portfolio Companies, including siphoning funds from the Portfolio Companies in the form of management consulting fees; and

(f)    engaging in various conflicted, self-dealing transactions knowingly designed to divert to Defendants control over the Insured Zohar Funds' equity interests in the Portfolio Companies in a gross abuse of Defendants' various positions of control over the Insured Zohar Funds, including, among other things, obstructing and impeding Zohar II's ability to monetize its equity interests in the Portfolio Companies to avoid its Note payment default . . . .[104]

Unlike the pleading circumstances in the cases cited by the Defendants that often left parties and the courts confused and guessing as to the legal and factual bases for claims,[105] MBIA's claim arising from the allegations of paragraph 191 is sufficiently pled to provide adequate notice of the challenged conduct because these categories are detailed enough to help guide the reader through the common allegations. Accordingly, the Court will not dismiss the claim.[106]

---

[104] Compl. ¶ 191.

[105] *See, e.g.*, *Tillio v. H&R Block, Inc.*, 445 Fed. Appx. 604, 604-05 (3d Cir. 2011) (finding pro se complaint "largely incomprehensible" and deficient under Federal Rule 8(a)); *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006) (dismissing a shotgun securities class action complaint as insufficient under Federal Rule 9(b) when claim recitals included no specific allegations); *Johnson Enters. of Jacksonville, Inc. v. FPL Grp.*, 162 F.3d 1290, 1332 (11th Cir. 1998) (explaining how a deficient pleading led the Court to believe that every general allegation was material to each claim); *Krushin v. Kosek*, No. 4:16-CV-1540, 2019 WL 1246963, at *8 (M.D. Pa. Feb. 22, 2019) (recommending a more definite statement of a pro se party's claims which were confused and opaque); *Vorobey v. Cleveland Bros. Equip. Co., Inc.*, No. 4:18-CV-865, 2018 WL 6436717, at *4 (M.D. Pa. Dec. 7, 2018) (finding no facts alleged to support conclusory allegations); *Digene Corp. v. Ventana Med. Sys., Inc.*, 476 F. Supp. 2d 444, 448 n.36 (noting that plaintiff's incorporation of all prior allegations into several counts was a shotgun approach leading to the incorporation of irrelevant items).

[106] The Defendants move alternatively for a more definite statement under Federal Rule 12(e). FED. R. CIV. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."). "The prevailing standard employed by Third Circuit courts is to grant a Rule 12(e) motion 'when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'" *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736-37 (D.N.J. 2008) (quoting *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003)). Those circumstances are not present here.

## 2.      No Viable Claim

### (a)      Limitation of Liability

The Defendants argue that dismissal of Count I is also warranted because the CMAs expressly and broadly limit the Patriarch Managers' liability.[107]  The Defendants acknowledge that there is an exception to the CMAs' limitation of liability for "acts or omissions constituting fraud, bad faith, willful misconduct, gross negligence or breach of fiduciary duty[,]"[108] but assert that the Complaint fails to sufficiently allege such wrongful conduct.  They contend that the facts fail to suggest that the Patriarch Managers had a motive for wrongdoing.  Rather, it is their position that the interests of Tilton, her affiliates, the Zohar Funds, and the noteholders were aligned.[109]

The Complaint sets forth sufficient facts to support a claim under the CMAs' exceptions to liability.  Specifically, MBIA alleges a series of deliberate actions by the Patriarch Managers designed to harm the Zohar Funds, their noteholders, and MBIA all for the betterment of Tilton. Considering the factual allegations as a whole and accepting them as true, this conduct would not be exculpated under applicable New York law.[110]   Moreover, Tilton's alleged alignment of interests is a defense, the consideration of which must be left after the completion of discovery given that "[t]he purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."[111]

### (b)      Preclusion of the OC Test Claims

Similar to arguments made in the Zohar Adversary, the Defendants argue that MBIA's breach of contract claim related to loan miscategorization and OC Test miscalculations must be dismissed as precluded.  They assert that the same allegations were raised by the Securities and Exchange Commission in a 2015 administrative action (the "Action") against Tilton and the

---

[107] *See* Adv. D.I. 26, Ex. 2 (Zohar I CMA) § 4.4 ("Liability of the Collateral Manager").

[108] *Id.*

[109] The Defendants also argue that the contract claim is precluded because the CMAs did not guaranty repayment to the Noteholders.  *See id.* § 2.2(a).  However, this argument is unavailing because it assumes that the Patriarch Managers fulfilled their duties and obligations under the relevant Transaction Documents and that, nonetheless, the Noteholders' investments still underperformed.  Of course, the fulfillment of the Patriarch Managers' duties and obligations is what MBIA challenges in Count I.

[110] *See, e.g.*, *Kalisch-Jarcho, Inc. v. City of N.Y.*, 448 N.E.2d 413, 416-17 & n.4-5 (N.Y. 1983) (explaining that gross negligence refers to implicit intentional misconduct that "betokens a reckless indifference to the rights of others" and bad faith is an example of explicit intentional misconduct that "connotes a dishonest purpose"); *Net2Globe Intern., Inc. v. Time Warner Telecom of N.Y.*, 273 F. Supp. 2d 436, 454 (S.D.N.Y. 2003) (explaining that the exceptions to exculpatory clauses demand "nothing short of . . . a compelling demonstration of egregious intentional misbehavior evincing extreme culpability:  malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of wanton acts.").

[111] *Mervyn's*, 426 B.R. at 494 (quoting *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 496 F. Supp. 2d 404, 407 (D. Del. 2007)).  For similar reasons, the Defendants' arguments that MBIA fails to sufficiently allege causation must fail.  *See e.g.*, Adv. D.I. 50 ¶ 54 (arguing that the global financial crisis beginning in 2008 caused the Zohar Funds' defaults).

Patriarch Managers.[112]    The proceeding was premised on certain antifraud provisions of the Investment Advisers Act of 1940 and Investment Company Act of 1940[113] and was resolved in favor of Tilton and the Patriarch Managers.[114]    The Defendants contend that the Administrative Law Judge considered and "resoundingly rejected"[115] MBIA's miscategorization and OC Test allegations when rendering the ruling in the Action (the "Final SEC Order").    MBIA disagrees.

"Issue preclusion bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'"[116] "If a judgment does not depend on a given determination, relitigation of that determination is not precluded."[117]    "A determination ranks as necessary or essential only when the final outcome hinges on it."[118]

Two issues were raised in the Action; namely, whether:

> (1) Tilton improperly categorized and overvalued loans, such that Zohar II and Zohar III never failed their OC Ratio Tests, enabling Respondents to collect Subordinated Collateral Management Fees and other payments; and that these departures from the provisions of the indentures were not disclosed to investors; and (2) the Funds' financial statements were false and misleading and did not comply with GAAP, in respect to impairment and fair valuing of assets.[119]

The first part of issue number one is relevant to MBIA's breach of contract claim as MBIA argues that the Patriarch Managers' improper loan categorization and calculation of the OC Test violated the Indentures and by extension, the CMAs.    However, in rendering a decision on the issue, Administrative Law Judge Fox focused only on its second part.    In particular, Judge Fox found and concluded that, "assuming *arguendo* that asset categorizations and consequent OC Ratio computations were not in accord with the provisions of the indentures, this disparity was disclosed to the investors."[120]    No decision was made as to whether there was a violation of the Indentures and, accordingly, the Court agrees with MBIA that its claims should not be dismissed as precluded.

---

[112] *See* Adv. D.I. 26, Ex. 4.

[113] *Id.* at 2.

[114] *Id.* at 57.

[115] Adv. D.I. 50 ¶ 46.

[116] *Bobby v. Bies*, 556 U.S. 825, 834 (2009) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980)).

[117] *Id.*

[118] *Id.*

[119] Adv. D.I. 26, Ex. 4 at 47-48.

[120] *Id.* at 52; *see also id.* at 51-52 ("The Division argues that Tilton improperly categorized the Zohar Funds' loan assets . . . and that these alleged departures from the provisions of the indentures were material and not disclosed . . . . .    However, it is concluded that Respondents' approach was disclosed . . . .").

A.      **Tortious Interference (Counts II and III)**

Counts II and III are MBIA's tortious interference claims against Tilton, the Patriarch Partners, PPAS, and the Patriarch Managers.  Under New York law,[121] "[t]he elements of a cause of action for tortious interference with contract are (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third party's breach of that contract; and (4) damages."[122]

Count II alleges that the Defendants, through their affirmative acts and domination and control, intentionally and improperly induced or caused the Zohar Issuers to breach their obligations under the Indentures to perform their payment obligations in accordance with the Zohar Notes and other governing documents and to not take any action to impair the related collateral.[123] Similarly, Count III alleges that the Defendants, through their affirmative acts and domination and control, intentionally and improperly induced or caused the Zohar Issuers to breach their obligations under the insurance and indemnity agreements to comply with the terms and conditions of, and enforce their rights under, each Transaction Document to which they are a party, pay "Debt" (as defined in the insurance agreements), and apply their funds to pay amounts due.[124]

The Defendants move to dismiss MBIA's tortious interference claims for three reasons. First, they argue that Federal Rule 8's notice pleading standards are not fulfilled because MBIA does not differentiate between or among the Defendants or identify any specific acts underlying the claims.  Second, they argue that Tilton, the Patriarch Managers, and PPAS cannot be held liable for tortious interference because they were agents of the Zohar Funds.  Third, and finally, they argue that the economic interest doctrine bars MBIA's claims.

The Court extensively explored the Defendants' agency and economic interest arguments when it addressed the Zohar Funds' tortious interference claims in the Zohar Adversary dismissal ruling.[125]  Similar to the reasoning therein, the Court rejects the same arguments in this proceeding.

Nonetheless, the Court will dismiss Counts II and III against the Patriarch Partners, PPAS, and the Patriarch Managers for MBIA's failure to plead with sufficient particularity the wrongful conduct each Defendant took to tortiously interfere with the Zohar Issuers' performance of the Indentures and insurance agreements.  The counts do not specify the wrongful actions of the specific Defendants but rather incorporate the Complaint's common allegations.  Many of the allegations, however, simply refer to "the Defendants" as the bad actor.[126]  Because of this group pleading, the Court is left guessing which Defendant did what particular act.  MBIA submits that

---

[121] Both parties apply New York law to this claim.

[122] *Iacono v. Pilavas*, 125 A.D.3d 811, 812 (N.Y. App. Div. 2015).

[123] Compl. ¶¶ 201-03.

[124] *Id.* ¶¶ 210-11.

[125] *Zohar CDO*, No. 20-50534, 2021 WL 2495146, at **13-15.

[126] *See, e.g.*, Compl. ¶¶ 79, 80, 90, 94, 97, 101-02, 104, 107, 110, 111, 112, 113, 114, 120, 125, 129, 156, 174, 175, 180.

its theory of Tilton's "concerted scheme" supports its group pleading. This is sufficient to allege claims against Tilton but not the remaining Defendants. Each non-Tilton Defendant is entitled under Federal Rule 8(a) to receive notice of the challenged part they played in the scheme,[127] and the common allegations of the Complaint fail to do that. In the interest of providing proper notice to the Defendants and bringing efficiency and economy to these proceedings,[128] the Court will dismiss Counts II and III as to all Defendants save for Tilton but grant MBIA leave to amend[129] its Complaint to properly attribute the challenged actions to a specific Defendant or group thereof.

## B.   Declaratory Relief (Count IV)

In Count IV, MBIA seeks declaratory relief against all Defendants on two issues. It first seeks a declaration that it is the legal, beneficial, and equitable owner of the equity interests in the Portfolio Companies that were issued or otherwise created in the name of Zohar I (the "Zohar I Equity").[130] It also seeks a declaration that the Governance Conveyances, the November 2017 Written Consents, and any other restrictions and limitations imposed on the equity interests by Defendants' execution of conflicted, self-dealing transactions (including any purportedly irrevocable proxies, shareholder agreements and limited liability company agreements or amendments thereto) are invalid, void, and enforceable.[131] The Defendants move to dismiss the count for several reasons.

First, the Defendants argue that MBIA's request for a declaration regarding the Zohar I Equity and the Governance Conveyances is moot and must be dismissed as a result of the Court's

---

[127] *See, e.g.*, *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 387 (D.N.J. 2019) ("Alleging that 'Defendants' undertook certain illegal acts - without more - injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." (quoting *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-01206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014)); *McCoy v. Favata*, No. 17-1046, 2019 WL 1429570, at *14 (D. Del. Mar. 29, 2019) ("Such vague, group-pled, puzzle pleading is inappropriate and does not provide Defendants the required fair notice of the claims and the grounds upon which they rest."); *Joseph v. Frank (In re Troll Commc'ns, LLC)*, 385 B.R. 110, 120-21 (Bankr. D. Del. 2008) (dismissing complaint with leave to amend to specify which defendants participated in the alleged wrongful actions).

[128] *See, e.g.*, *Johnson Enters.*, 162 F.3d at 1332 (describing the "chaotic, expensive, and time-consuming litigation (including trial) on matters" that sprung from a complaint in which thirty-seven paragraphs of general allegations were incorporated by reference into each count, obscuring the material allegations).

[129] Under Federal Rule 15(a)(2), made applicable to these proceedings by Bankruptcy Rule 7015, the Zohar Funds may amend with the Court's permission. As directed by that rule, "the court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Factors courts consider when deciding whether amendment is inappropriate are "(1) whether the amendment has been unduly delayed; (2) whether the amendment would unfairly prejudice the non-moving party; (3) whether the amendment is brought for some improper purpose; and (4) whether the amendment is futile." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, No. 11-54-SLR, 2013 WL 571801, at *1 (D. Del. Feb. 13, 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). There are no circumstances that prevent the Court from granting MBIA leave to amend any of the claims the Court dismisses in this Memorandum Order.

[130] Compl. ¶ 226(a).

[131] *Id.* ¶ 226(b)-(d).

prior *Order Granting in Part Debtors' and Independent Director's Joint Emergency Motion for an Order Declaring That the Debtors Control the Portfolio Companies and Granting Related Relief* (the "Equity Order").[132]    The Equity Order declared that, as of March 30, 2020, the Zohar Funds are the legal and beneficial owners of the equity or membership interests issued or otherwise recorded in their names.[133]    It also declared that, as of March 30, 2020, the Governance Conveyances were terminated.[134]

Count IV is not moot.  Among other things, MBIA seeks relief relating to the time period prior to the entry of the Equity Order,[135] and it seeks a declaration of *its* equity ownership (not the Zohar Funds).   Nonetheless, given the Equity Order and the Defendants' positional change regarding equity ownership and the effectiveness of the Governance Conveyances, MBIA may wish (and is hereby granted permission) to amend the Complaint to clarify that it is seeking a declaration that it has been the legal, beneficial, and equitable owner of the Zohar I Equity since it bought the equity at auction and that the Governance Conveyances have been invalid, void, and unenforceable since their inception.

Second, the Defendants argue that MBIA lacks standing to seek a declaration regarding the November 2017 Written Consents as it is a derivative claim that must be raised on behalf of the relevant Portfolio Companies.  Moreover, they argue that MBIA fails to articulate a legal theory underlying its attempt to invalidate the consents save for general statements that the Defendants violated the Indentures and applicable law.  The Defendants highlight that MBIA does not identify which Defendants violated the Indentures, how such parties could be held liable given that they were not parties to the Indentures, and what applicable law was violated.  Finally, they argue that MBIA did not establish a basis for its harm with respect to two of the November 2017 Written Consents because MBIA did not allege that it holds equity interests in the relevant Portfolio Companies.

The Defendants have identified valid pleading deficiencies related to MBIA's claim with respect to the November 2017 Written Consents.  In response, MBIA merely argues that it would be premature to dismiss the claim given the allegations of wrongdoing.  Specifically, it argues that the Defendants improperly restricted MBIA's equity ownership in at least one of the relevant Portfolio Companies, concealed from MBIA and the Zohar Funds the true nature of their equity holdings, and engaged in self-dealing transactions.  While MBIA urges that this is enough to withstand dismissal, the Court does not agree.  MBIA must clarify its request for declaratory judgment, including its standing and legal entitlement for relief.   Accordingly, Count IV is dismissed with respect to the November 2017 Written Consents with leave to amend.

---

[132] Case No. 18-10512, D.I. 1542 (Mar. 30, 2020).

[133] *Id.* ¶ 3.

[134] *Id.* ¶ 4.

[135] Compl. ¶¶ 223-24.

**C.     Breach of Fiduciary Duty (Count V), Aiding and Abetting Breach of Fiduciary Duty (Count VI), Faithless Servant (Count VII)**

MBIA alleges in Count V claims against Tilton, the Patriarch Managers, and PPAS for breach of fiduciary duty.  It alleges in Count VI claims against the Patriarch Partners, the Octaluna Entities, PPMG, ARK II CLO 2001-1, LLC, and ARK Investment Partners II, L.P. for aiding and abetting those breaches.  Count VII is MBIA's faithless servant claim against Tilton, the Patriarch Managers, and PPAS based on breach of fiduciary duty.  MBIA brings these claims as subrogee to the Noteholders.[136]

In Count V, MBIA alleges that the Patriarch Managers owed fiduciary duties *to the Zohar Funds* as a result of the CMAs and their position and investment and advisory services as collateral managers.[137]  Similarly, it alleges that PPAS owed fiduciary duties *to the Zohar Funds* because of its position and services as agent under the Credit Agreements.[138]  MBIA alleges that Tilton owed fiduciary duties *to the Zohar Funds* as a registered investment advisor and principal of the Patriarch Managers and PPAS.[139]  While MBIA alleges in a conclusory and passing fashion that Defendants owed fiduciary duties to the Noteholders,[140] notably absent are any supporting facts or articulated legal theory for such allegation.  The Defendants urge the Court to dismiss the count as a result. They also contend that Counts VI and VII must similarly be dismissed.[141]

MBIA argues that its fiduciary duty and faithless servant counts rest upon a theory that Tilton, the Patriarch Managers, and PPAS each owed the Noteholders a direct fiduciary duty extrinsic to the Transaction Documents and based on specific facts and circumstances.  The cases MBIA cite indicate that there can be a fiduciary relationship when one party "'is under a duty to act or to give advice for the benefit of the other upon matters within the scope of the relation.'"[142] It is a fact-specific inquiry aimed to understand "all the circumstances and conduct relevant to understanding the parties' relationship" to determine whether "'one party reasonably trusted another.'"[143]  The level of trust, however, must be high – something more than that which is present

---

[136] *Id.* ¶¶ 235, 245, 248.

[137] *Id.* ¶¶ 228-29.

[138] *Id.* ¶ 230.

[139] *Id.* ¶ 231.

[140] *Id.* ¶ 233.

[141] *See id.* ¶ 248 ("By reason of their breaches of their fiduciary duties owed to the Zohar Funds, Tilton, the Patriarch Manager Defendants and PPAS are faithless servants . . . ."); *see also id.* ¶¶ 238-40 (describing the fiduciary relationship between the Zohar Funds and the Defendants).

[142] *St. John's Univ., N.Y. v. Bolton*, 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672, 677 (N.Y. App. Div. 1987)); *accord Veleron Holding, B.V. v. Morgan Stanley*, 117 F. Supp. 3d 404, 453 (S.D.N.Y. 2015); *Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 740 (N.Y. 2012); *EBC I, Inc. v. Goldman, Sachs & Co.*, 832 N.E.2d 26, 31 (N.Y. 2005).

[143] *St. John's*, 757 F. Supp. 2d at 166 (quoting *Brass Am Film Techs., Inc.*, 987 F.2d 142, 150-51 (2d Cir. 1998)).

in a typical arms-length business transaction.[144]  Among other things, an element of control must be present that makes one party vulnerable to the other and unable to protect itself.[145]

As a basis for the creation of a fiduciary relationship, MBIA argues that Tilton, the Patriarch Managers, and PPAS regularly interacted and communicated with the Noteholders regarding their collateral.  MBIA points the Court to two paragraphs of the Complaint to support its theory, but neither are sufficient.  The paragraphs discuss two presentations by Tilton (not the Patriarch Managers or PPAS), neither of which are alleged to be made to the Noteholders (only to "varying audiences", Moody's, and "prospective investors") and neither of which contained information beyond general statements supporting the likelihood that the Noteholders' loans would be repaid.  The paragraphs also reference non-descript monthly and quarterly reports generated by an unspecified party but reviewed and verified by the Patriarch Managers or Tilton (not PPAS).[146]  MBIA also references communications to Noteholders detailed in the Final SEC Order but that order is problematic for MBIA given that it concludes that the Zohar Funds (not the Noteholders) were the investment adviser clients of the Patriarch Managers and Tilton and were the entities owed fiduciary duties.[147]  Moreover, there is no reference to PPAS and it was not a party to that action.[148]  The remaining factual allegations relied upon by MBIA simply describe the relationship between the Zohar Funds, the Defendants, and at times, the Portfolio Companies.[149]  One paragraph generally avers that the Patriarch Managers were required to manage the Zohar Funds' assets for the Noteholders.[150]  Examining these as a whole, and putting aside the failure of MBIA to clearly articulate in the Complaint that Counts V-VII are based on a direct fiduciary duty owed to it, the Complaint's allegations are insufficient to support a conclusion that a higher trust arose between the sophisticated and commercial parties involved in this proceeding.[151]

The Complaint leads the reader to conclude that MBIA is attempting to maintain a derivative claim for breaches of fiduciary duty owed to the Zohar Funds.  Accordingly, the Court will dismiss Counts V and VII but grant MBIA leave to amend the Complaint to provide additional

---

[144] *Oddo*, 973 N.E.2d at 740-41; *EBC I*, 832 N.E.2d at 31; *accord St. John's*, 757 F. Supp. 2d at 167 (holding that "a court will look to whether a party reposed confidence in another and reasonably relied on the other's superior expertise or knowledge" (internal quotations omitted)).

[145] *St. John's*, 757 F. Supp. 2d at 168 (finding that plaintiff was vulnerable to defendants' abuse of their positions of trust, that defendants were empowered by their superiority, and that plaintiff was unable to effectively protect its interests because of such empowerment); *Veleron*, 117 F. Supp. 3d at 454 (examining the degree of direction of control between the parties).

[146] *See* Compl. ¶¶ 78-80.

[147] *See* Adv. D.I. 26, Ex. 4 at 49-50.

[148] *See generally id.*

[149] *See* Compl. ¶¶ 8-9, 14, 228, 231, 238, 239.

[150] *See id.* ¶ 8.

[151] *See, e.g.*, *EBC I*, 832 N.E.2d at 32 (noting "the general rule that fiduciary obligations do not exist between commercial parties operating at arm's length – even sophisticated counseled parties"); *Oddo*, 973 N.E.2d at 741 ("A debtor and creditor have no special relationship of confidence and trust, and the relationship is generally controlled by contract." (internal citations omitted)).

details and more clearly articulate the basis for its claims.  Without a breach of fiduciary duty claim, MBIA's Count VI for aiding and abetting will also be dismissed with leave to amend.[152]

### D.    Conversion (Count VIII)

MBIA alleges in Count VIII claims for conversion against all Defendants.  MBIA brings these claims as owner of Zohar I's assets, subrogee to the Noteholders, and as a holder of priority rights to payment under the Indentures.[153]

To state a claim for conversion under New York law,[154] a plaintiff must allege that "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights."[155]  Certain intangible rights such as equity interests may be converted but contractual rights may not.[156]

Among other things, the Defendants argue that MBIA fails to adequately plead the property converted.  To that end, Count VIII incorporates the Complaint's common allegations and then alleges that "the Defendants intentionally interfered with MBIA's and the Insured Funds' property rights with respect to the Collateral by wrongfully executing agreements, amendments or other ultra vires transactions designed to strip away valuable rights in that property and transfer them to the Defendants . . . ."[157]  Moreover, MBIA alleges that "Defendants further intentionally interfered with MBIA's and the Insured Zohar Funds' rights to payments and other equity rights and interests by selling certain Portfolio Companies in which MBIA and the Insured Zohar Funds own equity without paying them due compensation, including without limitation the proceeds of the sale of HVEASI, which Defendants represented to have been owed 100% by Zohar II."[158]

The Court agrees that the allegations are too vague to gain an understanding of, among other things, the property of MBIA converted, the nature of such property (*e.g.,* equity interests, contractual rights, or otherwise), how it was converted, and when.  MBIA urges the Court to consider the totality of the allegations made in the Complaint to determine the answers to these questions.  However, the Court will not attempt to cobble together the answers to these specific questions by combing through 186 incorporated paragraphs and making various assumptions

---

[152] *See, e.g.*, *Related Westpac LLC v. JER Snowmass LLC*, No. 5001-VCS, 2010 WL 2929708, at *8 (Del. Ch. Ct. July 23, 2010) (collecting and citing cases for its holding that "because the breach of fiduciary duty claim is dismissed, the aiding and abetting claim must also be dismissed").

[153] *See* Compl. ¶¶ 250, 254.

[154] Both parties apply New York law to this claim.

[155] *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 540 (S.D.N.Y. 2009) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)).

[156] *Zohar CDO*, No. 20-50534, 2021 WL 2495146, at **34-35.

[157] Compl. ¶ 251.

[158] *Id.* ¶ 253.

related to the nature of MBIA's conversion claim necessitated by the multiple hats its wears and the various property and rights it possesses by virtue of the Transaction Documents and its claims of collateral ownership. Dismissal will be granted with leave to amend.

### E.    Unjust Enrichment (Count IX)

In Count IX, MBIA alleges claims for unjust enrichment against all Defendants for all of the conduct challenged in the Complaint.[159] It argues that the Defendants knew of and played an active role in each other's wrongdoings, including the OC Test manipulation and the scheme to transfer valuable rights, interests, and amounts away from the Zohar Funds.[160] MBIA further alleges that the Defendants received the assets[161] and thus interfered with its recovery.[162]

Defendants seek dismissal of these claims, arguing that the claims are precluded by the existence of contracts governing the subject matter of the claim. They also argue that MBIA fails to specify the wrongful acts taken by each Defendant. In response, MBIA asserts that dismissal is not appropriate because its claims exceed the scope of its contract claim. It is against many more Defendants and targets misconduct and time periods excluded from the contract claim. Moreover, it argues that dismissal at this early stage would be prejudicial, leaving it without a proper remedy against non-contracting Defendants who improperly received ill-gotten gains as a result of a contracting Defendant's wrongful behavior.

For similar reasons supporting the dismissal of MBIA's tortious interference claims, the Court will dismiss the unjust enrichment claims against all Defendants save for Tilton, LDI, Zohar Holding, and Patriarch Partners. Given the alleged scheme, sufficient allegations have been made to support a plausible claim of tortious interference against Tilton. Moreover, as explained more thoroughly in Section V.H, sufficient facts are alleged to support a plausible claim of alter ego liability against LDI, Zohar Holding, and Patriarch Partners. However, the remainder of the claims will be dismissed with leave to amend so that MBIA may correct the group pleading problems already articulated by the Court and specify for each Defendant the actions in which they were involved that underly the unjust enrichment claims. Otherwise, the parties and the Court cannot properly understand which entities were responsible for what parts of the wrongdoing and how each was unjustly enriched.[163]

---

[159] *Id.* ¶ 257.

[160] *Id.* ¶ 255 (incorporating 186 common allegations); *id.* ¶ 258 ("As a result of the misconduct set forth above, the Defendants have been enriched at MBIA's and the Zohar Funds' expense").

[161] *Id.* ¶¶ 257-58.

[162] *Id.* ¶ 258.

[163] It is not clear from the face of the Complaint that contracts governing the challenged actions exist between MBIA and the Defendants except for the Patriarch Managers. Accordingly, dismissal of the claims against these Defendants would not be appropriate under the Defendants' duplication argument. *See Zohar CDO 2003-1*, No. 20-50534, 2021 WL 2495146, at **34-35; *see also Lee v. Kylin Mgmt. LLC*, No. No. 17-CV-7249 (JMF), 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019) (exploring conflicting case law and ultimately holding that an unjust enrichment claim should be permitted regardless of the existence of a contract governing the claim's subject matter if the plaintiff is a non-contracting party in order to prevent the transfer and retention of ill-gotten funds from the breaching party). With respect to the Patriarch

### F.      Malicious Prosecution (Count X)

In Count X, MBIA asserts two claims for malicious prosecution against Tilton and Patriarch XV, LLC ("Patriarch XV").   The first claim arises from the Zohar I Involuntary Proceeding, which MBIA alleges Tilton caused Patriarch XV to commence.[164]  The second arises from Tilton's defenses, counterclaims, and third-party claims asserted against MBIA in the Delaware 225 Action.[165]   According to MBIA, Tilton and Patriarch XV acted without probable cause and with malice.   MBIA also asserts that the proceedings, while ultimately resolved in its favor, further delayed and interfered with the exercise of its contractual rights and remedies under the Transaction Documents (including its right to remove Patriarch VIII as collateral manager for Zohar I) and resulted in substantial litigation costs and expenses.[166]

### 1.      Zohar I Involuntary Proceeding

Defendants move to dismiss as untimely the claim relating to the Zohar I Involuntary Proceeding.  Under applicable New York law,[167] "[a] cause of action for malicious prosecution is governed by a one-year statute of limitations[.]"[168]  It accrues "when [a] plaintiff first becomes entitled to maintain the action, i.e., when there is a determination favorable to [the] plaintiff, notwithstanding the pendency of an appeal."[169]  Claims for malicious prosecution arising from an involuntary bankruptcy proceeding begin to run upon the dismissal of that proceeding.[170]  MBIA argues that dismissal is improper because its Complaint does not conclusively demonstrate when the Zohar I Involuntary Proceeding terminated.  However, the Court may take judicial notice that

---

Managers, the existence and enforceability of the CMAs is not in dispute and, as the Complaint currently stands, the actions underlying the breach of contract claim against the Patriarch Managers in Count I overlap substantially with the unjust enrichment claims against them in Count IX.  Accordingly, the Court expects any amended Complaint to make clear which facts and circumstances allegedly support an unjust enrichment claim against the Patriarch Managers outside the scope of Count I.

[164] Compl. ¶ 262.

[165] *Id.*

[166] *Id.* ¶¶ 262-63.

[167] The parties apply New York law to this claim.

[168] *10 Ellicott Square Ct. Corp. v. Violet Realty, Inc.*, 81 A.D.3d 1366, 1368 (N.Y. App. Div. 2011).

[169] *Id.*; *accord Dudick v. Gulyas*, 277 A.D.2d 686, 688 (N.Y. App. Div. 2000).

[170] *Lander v. Gilman*, 278 N.Y.S.2d 149, 152 (N.Y. Sup. Ct. 1967); *Assets Collecting Co. v. Myers*, 167 A.D. 133, 138 (N.Y. App. Div. 1915).

it was dismissed and closed on March 28, 2016,[171] more than one year prior to the commencement of this proceeding.[172]  Accordingly, dismissal of this claim as time-barred is warranted.

## 2.    Delaware 225 Action

Defendants also move to dismiss the claim relating to the Delaware 225 Action for failure to plead.  Under Delaware law,[173] "[f]ive requisites must coexist in order to render [a malicious prosecution] action viable:  1) the institution of civil proceedings; 2) without probable cause; 3) with malice; 4) termination of the proceedings in the aggrieved party's favor; and 5) damages which were inflicted upon the aggrieved party by seizure of property or other special injury."[174]  In Delaware, malicious prosecution claims are "viewed with disfavor" "and, therefore, assessed with careful scrutiny."[175]  They tend to chill litigation and deter plaintiffs from vindicating their rights for fear of legal liability if they lose.[176]

At the outset, the Defendants assert that the claim must be dismissed against Patriarch XV because it was not a party to the Delaware 225 Action.  A review of that action's docket confirms this assertion, and MBIA notes in its briefing that its malicious prosecution claim relating to the Delaware 225 Action is not asserted against Patriarch XV.[177]  Accordingly, Defendants' request to dismiss Patriarch XV from this claim will be granted.

The Defendants argue that the claim against Tilton should be dismissed for three reasons.  First, they argue that MBIA does not plead that the claims brought by Tilton against MBIA in the Delaware 225 Action were terminated in MBIA's favor.  However, the Complaint does make those allegations.[178]  Its second argument that MBIA fails to allege special injury is likewise unavailing

---

[171] *See In re Zohar CDO 2003-1, Ltd.*, No. 15-23680 (RDD) (Bankr. S.D.N.Y.); *In re Zohar CDO 2003-1, Corp.*, No. 15-23681 (RDD) (Bankr. S.D.N.Y.); *In re Zohar CDO 2003-1, LLC*, No. 15-23682 (RDD) (Bankr. S.D.N.Y.).  A court may take judicial notice of another court's docket.  *Orabi v. Attorney General of the United States*, 738 F.3d 535, 537 n.1 (3d Cir. 2014).

[172] MBIA has argued that the parties agreed to toll all causes of action in connection with the Zohar Funds as of May 21, 2018.  However, the one-year statute of limitations period for any malicious prosecution claim related to the Zohar I Involuntary Proceeding expired by then.

[173] The parties apply Delaware law to this claim.

[174] *Nix v. Sawyer*, 466 A.2d 407, 411 (Del. Super. Ct. 1983); *Winshall v. Viacom Int'l, Inc.*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *15 (Del. Super. Ct. Feb. 25, 2019); *Nevins v. Bryan*, No. 05-CV-07-041-ESB, 2005 WL 2249520, at *1 (Del. Super. Ct. Sept. 8, 2005) (quoting *Kaye v. Patone, Inc.*, 395 A.2d 369, 372 (Del. Ch. 1978), *aff'd* 901 A.2d 120 (Del. 2006)).

[175] *Nix*, 466 A.2d at 411; *Kaye v. Pantone, Inc.*, 395 A.2d 369, 372 (Del. Ch. 1978); *Winshall*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *15; *see also Blue Hen Mech., Inc. v. Christian Bros. Risk Pooling Tr.*, 117 A.3d 549, 558 (Del. 2015) ("[T]he case law that Blue Hen cites regarding the tort of malicious prosecution is dusty from lack of use.  And we believe that is a good thing.").

[176] *Nix*, 466 A.2d at 411.

[177] Adv. D.I. 46 ¶ 118.

[178] Compl. ¶ 172 (alleging that claims filed against MBIA in the Delaware 225 Action were premised on Defendants' claim of ownership of the Portfolio Companies' equity); *id.* (alleging that, on November 30,

as MBIA asserts in the Complaint that the Delaware 225 Action served to delay the exercise of its rights and remedies.[179]  This is "something more than expenses and attorney's fees" needed to sustain a malicious prosecution claim.[180]  Finally, the Defendants argue that MBIA fails to properly allege that the Delaware 225 Action was brought without probable cause and with malice.  The Court does not agree.

Probable cause "is determined at the time of the inception of the original proceeding[]."[181] Its existence will be established if the person bringing the civil suit "reasonably believes that he [or she] has a good chance of establishing it to the satisfaction of the Court or the jury."[182]  Malice may be averred generally and exists when the commencement of the suit was "done with a wrongful or improper motive or with a wanton disregard for the rights of that person against whom the act is directed."[183]  "[L]itigating a case about which reasonable minds might differ" does not amount to malicious prosecution.[184]

The Complaint alleges a series of inappropriate maneuverings designed by Tilton to thwart MBIA's exercise of its rights and remedies.[185]  According to MBIA, one such action was her pursuit of claims against MBIA in the Delaware 225 Action premised on her knowingly, wrongful claim of Portfolio Company equity ownership.[186]  When she failed to prevail in that suit, MBIA alleges that she further delayed by obtaining a stay pending appeal and then commencing the Zohar Funds' bankruptcy proceedings.[187]  MBIA further claims that Tilton's ultimate abandonment of her ownership claim as reflected in the Equity Order is further indicative of her bad faith and

---

2017, the court confirmed that the Zohar Funds at issue owned the equity); *id.* ¶ 173 (alleging that the court rejected each ground asserted by the Defendants in support of their ownership claim); *id.* ¶ 262 (alleging that the Delaware 225 Action was adjudicated in MBIA's favor).

[179] *See, e.g.*, *id.* ¶¶ 171, 263.

[180] *BRP Hold Ox, LLC v. Chilian*, No. N18C-04-116 CLS, 2018 WL 5734648, at *6 (Del. Super. Ct. Oct. 31, 2018); *accord Nevins*, No. 05C-07-041-ESB, 2005 WL 2249520, at *2; *Winshall*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *16.

[181] *BRP*, No. N18C-04-116 CLS, 2018 WL 5734648, at *5; *accord Nevins*, No. 05C-07-041-ESB, 2005 WL 2249520, at *1.

[182] *BRP*, No. N18C-04-116 CLS, 2018 WL 5734648, at *5; *accord Nevins*, No. 05C-07-041-ESB, 2005 WL 2249520, at *1; *Winshall v. Viacom Int'l, Inc.*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *15.

[183] *BRP*, No. N18C-04-116 CLS, 2018 WL 5734648, at *5; *accord Nevins*, No. 05C-07-041-ESB, 2005 WL 2249520, at *1; *Winshall*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *16 (quotations and citations omitted).

[184] *Blue Hen*, 117 A.3d at 561.

[185] *See, e.g.*, Compl. *passim*.

[186] *See, e.g.*, *id.* ¶¶ 171-72.

[187] *See, e.g.*, *id.* ¶ 174.

malicious prosecution.[188]  Accepting these allegations as true as the Court must at this stage, the Court finds that MBIA sufficiently alleges probable cause and malice.

Tilton argues that the Delaware 225 Action was brought to preserve her rights.  She also highlights that the action was tried to completion after extensive discovery, resulted in a lengthy and thorough opinion from the Delaware Chancery Court that made no reference to bad faith, and thereafter was stayed pending appeal.  The Court acknowledges that these facts weigh against a finding of malicious prosecution; however, it will not foreclose MBIA's claim at this initial stage and will weigh all evidence presented following completion of discovery.[189]  Right now, the Court is tasked only with deciding whether MBIA properly alleges a claim of malicious prosecution against Tilton, and it has.  Accordingly, dismissal of the claim will be denied.

### G.    Abuse of Process (Count XI)

Count XI is MBIA's final claim.  It is brought for abuse of process relating to the Zohar I Involuntary Proceeding.  The Defendants move to dismiss this claim as time barred under the one-year statute of limitations established by New York law for such claim.[190]  MBIA does not oppose dismissal on this ground.[191]  Accordingly, the Court will dismiss the count.

### H.    Defendants LD Investments, LLC and Zohar Holding, LLC

LDI and Zohar Holding are subject to MBIA's declaratory judgment, conversion, and unjust enrichment claims.  It seeks relief from these entities based on an alter ego theory.[192]  The Defendants request dismissal, asserting that MBIA fails to plead the required elements.  Both parties agree that to properly succeed on alter ego theory, MBIA must establish that (1) the subject entities "operate as a single economic entity" and that (2) there is an "overall element of injustice or unfairness."[193]  To that end, MBIA pleads that LDI and Zohar Holding are pass-through entities solely owned and controlled by Tilton,[194] that they are members of and holding companies for other Defendants,[195] and that Tilton, through her web of affiliated entities, took the series of actions

---

[188] *See, e.g.*, *id.* ¶ 183.

[189] *See, e.g.*, *Winshall v. Viacom Int'l, Inc.*, No. N15C-06-137 EMD CCLD, 2016 WL 3462119, at *12 (Del. Super. Ct. Feb. 29, 2016) (allowing malicious prosecution claim to continue in spite of "lingering questions of fact" and "[r]egardless of the strength of th[e] claim"); *Winshall*, No. N15C-06-137 EMD CCLD, 2019 WL 960213, at *16 (finding no malicious prosecution where defendant relied upon case law supportive of its position, suit was filed preserve it rights, and there was no finding that the suit was frivolous or warranted a fee award).

[190] *Ellicott Square*, 81 A.D.3d at 1368.

[191] *See* Adv. D.I. 46 ¶ 120 n.21.

[192] *Id.* ¶¶ 126-28.

[193] *Varbero v. Belesis*, No. 20-cv-2538, 2020 WL 5849516, at *3 (S.D.N.Y. 2020) (quoting *NetJets Aviation, Inc. v. LHC Commc'ns., LLC*, 537 F.3d 168, 177 (2d Cir. 2008)).

[194] *See* Compl. ¶¶ 9-15, 20-21.

[195] *See id.*

challenged in the Complaint to enrich herself at the expense of MBIA and others.[196]  MBIA asserts that this is sufficient to support a plausible conclusion that LDI and Zohar Holding were not operated as distinct entities independent from Tilton but rather, served as her vehicles for the movement of the assets and other wrongfully acquired benefits away from those rightfully entitled. The Court agrees with MBIA that the allegations are sufficient and will not require dismissal of the claims against these entities.[197]

## VI.    CONCLUSION

Much of MBIA's Complaint is vague and requires refinement.  Accordingly, for the foregoing reasons, the Court hereby **GRANTS IN PART and DENIES IN PART** the relief requested in the Motion to Dismiss as set forth below.

    1.    The following claims or counts are dismissed with leave to amend:

      (a)    Counts II and III (Tortious Interference) against all non-Tilton Defendants;
      (b)    Count IV (Declaratory Judgment) related to the November 2017 Written Consents;
      (c)    Count V (Breach of Fiduciary Duty);
      (d)    Count VI (Aiding and Abetting Breach of Fiduciary Duty);
      (e)    Count VII (Faithless Servant);
      (f)    Count VIII (Conversion); and
      (g)    Count IX (Unjust Enrichment) against all Defendants except Tilton, Patriarch Partners, LDI, and Zohar Holding.

    2.    The following claims or counts are dismissed without leave to amend:

      (a)    Count X (Malicious Prosecution) against Patriarch  XV;
      (b)    Count X (Malicious Prosecution) against Tilton relating to the Zohar I Involuntary Proceeding; and
      (c)    Count XI (Abuse of Process).

---

[196] *See* Compl. *passim*.

[197] *See, e.g.*, *Varbero*, No. 20-cv-2538, 2020 WL 5849516, at *4 (finding alter ego theory adequately pled where plaintiff plausibly alleged that defendants used certain corporate entities, over which they had sole control and ownership, in a series of fraudulent conveyances to shield funds from creditors).

In its briefing in opposition to the Motion to Dismiss, MBIA clarified that it also seeks relief from the Patriarch Partners based on an alter ego theory.  Adv. D.I. 46 ¶ 91.  To the extent the Defendants seek to dismiss Patriarch Partners for similar reasons as LDI and Zohar Holdings, the Court denies such request.

**3.**    All other relief requested in the Motion to Dismiss is denied.

Dated:  July 23, 2021

Karen B. Owens
United States Bankruptcy Judge