## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| QUORUM HEALTH CORPORATION, | Case No. 20-10766 (BLS) |
| Reorganized Debtor. | Jointly Administered |
| DANIEL H. GOLDEN, AS LITIGATION TRUSTEE OF THE QHC LITIGATION TRUST, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, SOLELY IN ITS CAPACITY AS INDENTURE TRUSTEE | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 21-51190 (BLS) |
| COMMUNITY HEALTH SYSTEMS, INC.; CHS/COMMUNITY HEALTH SYSTEMS, INC.; REVENUE CYCLE SERVICE CENTER, LLC; CHSPSC, LLC; PROFESSIONAL ACCOUNT SERVICES, INC.; PHYSICIAN PRACTICE SUPPORT, LLC; ELIGIBILITY SCREENING SERVICES, LLC; W. LARRY CASH; RACHEL SEIFERT; ADAM FEINSTEIN; AND CREDIT SUISSE SECURITIES (USA) LLC, | (Relates to A.D.I. 60 and 61) |
| Defendants. | |

## QUORUM HEALTH CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION PENDING ARBITRATION

| | |
|---|---|
| H. Peter Haveles, Jr. *(admitted pro hac vice)*<br>AKERMAN LLP<br>1251 Avenue of the Americas, 37th Floor<br>New York, New York 10020<br>Telephone: (212) 822-2280<br>Facsimile: (212) 259-8586<br>E-mail: peter.haveles@akerman.com<br><br>*Co-counsel for Quorum Health Corporation* | David M. Fournier (DE No. 2812)<br>Kenneth A. Listwak (DE No. 6300)<br>TROUTMAN PEPPER HAMILTON<br>SANDERS LLP<br>Hercules Plaza, Suite 5100<br>1313 N. Market Street, P.O. Box 1709<br>Wilmington, Delaware 19899-1709<br>\|Telephone: (302) 777-6500<br>Facsimile: (302) 421-8390<br>E-mail: david.fournier@troutman.com<br>          kenneth.listwak@troutman.com<br><br>*Co-counsel for Quorum Health Corporation* |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

ARGUMENT .............................................................................................................. 6

I.     The Dispute Regarding the Indemnification Request Is Not Subject to Arbitration .......... 6

II.    With Respect to Quorum's Claims, the Bankruptcy Code Overrides the Provisions
       of the Federal Arbitration Act Requiring Arbitration ........................................ 9

III.   If Section 8.02 *Arguendo* Requires Arbitration, the Bankruptcy Court Should Not
       Compel Arbitration of the Indemnification Request ....................................... 14

CONCLUSION.......................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*,
    390 B.R. 784 (S.D.N.Y. 2008) .............................................................................. 14

*Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989) .......................................................................... 12, 14

*Homaidan v. SLM Corp.*,
    587 B.R. 428 (Bankr. E.D.N.Y. 2018) ............................................................ 12, 13

*In re Anderson*,
    884 F.3d 382 (2d Cir. 2018) ...................................................................... 11, 12, 13

*In re APF Co.*,
    264 B.R. 344 (Bankr. D. Del. 2001) .................................................................. 9, 11

*In re EPD Investment Co., LLC*,
    821 F.3d 1146 (9th Cir. 2016) .............................................................................. 13

*In re F & T Contractors, Inc.*,
    649 F.2d 1229 (6th Cir. 1981) .............................................................................. 14

*In re United Companies Financial Corp.*,
    241 B.R. 521 (Bankr. D. Del. 1999) ..................................................................... 11

*In re White Mountain Mining Co., L.L.C.*,
    403 F.3d 164 (4th Cir. 2005) ................................................................................ 14

*Mintze v. American General Financial Services, Inc.*,
    434 F.3d 222 (3d Cir. 2006) ...................................................................... 10, 11, 12

*Moses v. CashCall, Inc.*,
    781 F.3d 63 (4th Cir. 2015) .................................................................................. 14

*Priority Health Care Corp. v. Aetna Specialty Pharmacy, LLC*,
    590 F. Supp. 2d 663 (D. Del. 2008) ....................................................................... 7

*Shearson/American Express, Inc. v. McMahon*,
    482 U.S. 220, 107 S. Ct. 2332, 96 L. Ed. 2d 185 (1987) ................................... 9, 10

*Transamerica Occidental Life Insurance Co. v. DiGregorio*,
    811 F.2d 1249 (9th Cir. 1987) ................................................................................ 7

ii

*Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers, AFL-CIO*,
  982 F.2d 884 (3d Cir. 1992)..................................................................................................8

*United Government Security Officers of America, International Union v. Exelon Nuclear
  Security, LLC*,
  24 F. Supp. 3d 460 (E.D. Pa. 2014) .......................................................................................8

62911024;1

Quorum Health Corporation ("Quorum"), by and through its attorneys, submits this memorandum of law in opposition to defendants Community Health Systems, Inc.'s, W. Larry Cash's and Rachel Seifert's Motion to Stay Litigation Pending Arbitration (the "Motion to Stay") [Dkt. No. 61]. Defendants submitted their Motion to Stay concurrently with their opposition to Quorums' Motion to Intervene (the "Motion to Intervene") [Dkt. No. 54], and set forth their arguments in support of the Motion to Stay in an omnibus Memorandum of Law submitted both in opposition to the Motion to Intervene and in support of their Motion to Stay ("Defendants' Memo"). [Dkt. No. 60]

## PRELIMINARY STATEMENT

1.      Defendants seek to stay the Motion to Intervene and any adjudication of the claim asserted in Quorum's complaint on the ground that Quorum's claim is subject to arbitration. Defendants' Motion to Stay, however, is premised on the fallacious legal assertions set forth in their cursory three-page argument. Defendants gloss over the pertinent text of Section 8.02 (a) and (e) of the Separation Agreement (as defined below) that addresses the issue of arbitration. That contractual provision explicitly provides that claims that do not seek monetary relief are not subject to arbitration. Contrary to defendants' assertions, Quorum does not seek monetary relief in the proposed complaint filed with the Motion to Intervene – rather, Quorum specifically seeks only a declaratory judgment regarding its contractual indemnification obligations. Thus, for this reason alone, this Court should deny the Motion to Stay without any further consideration.

2.      Even if there were colorable argument that Quorum's claim is subject to arbitration, which there is not, the Motion to Stay should still be denied. Because Quorum's claim is inextricably entwined with both this adversary proceeding commenced by the Trustee of the QHC Litigation Trust and the rights of the creditors of Quorum, the Bankruptcy Code overrides the Federal Arbitration Act (the "FAA"), which requires that the Motion to Stay be denied. Other than

1

citing one pertinent Third Circuit decision, defendants come forward with no meaningful analysis regarding the interplay of the Bankruptcy Code and the FAA. When such an analysis is undertaken, however, the only possible conclusion is that this Court retains jurisdiction to determine Quorum's declaratory claim and that Quorum's claim should not be stayed pending arbitration.

## **STATEMENT OF FACTS**

3.      Pursuant to Rule 7024 of the Bankruptcy Rules and Rule 24 of the Federal Rules of Civil Procedure, in the Motion, Quorum has moved to intervene in this adversary proceeding (the "Adversary Proceeding") and to file the Complaint annexed as Exhibit A to the Motion for the limited purpose of seeking a determination regarding Quorum's obligation arising from the request made by defendants Community Health Systems, Inc. ("CHS"), W. Larry Cash and Rachel Seifert to (i) advance payment of the attorneys' fees and expenses incurred in this Adversary Proceeding by those three defendants, and (ii) indemnify "all Losses" incurred by those defendants in this Adversary Proceeding (the "Indemnification Request"). [Dkt. No. 54]

4.      Quorum's indemnification obligations under the Separation Agreement are an integral part of this Adversary Proceeding, as the plaintiff (in his capacity as the Trustee of the QHC Litigation Trust (the "Trustee")), has asserted (among other claims) that the indemnification obligations are invalid as fraudulent transfers under Sections 544 and 548 of the Bankruptcy Code. The Indemnification Request is integrated into this Adversary Proceeding, both because the claims asserted by the Trustee address those obligations and also because the Indemnification Request arises specifically out of the conduct at issue in this Adversary Proceeding.  Any of defendants' ultimate liabilities arise from those defendants' conduct solely in their capacity representing and acting on behalf of CHS for CHS' exclusive benefit and not on behalf of or as representatives of Quorum.

2

62911024;1

5.      Quorum filed its Motion to Intervene in order to assert its claim for declaratory relief in accordance with this Court's retention of jurisdiction under all the pertinent documents regarding the plan of reorganization that this Court confirmed in the bankruptcy proceeding commenced by Quorum and its affiliates in 2020.  *See* the Motion to Intervene at 2, 7-15; Quorum's Reply at 7-9, 11.

6.      Section 4.02 of the Separation Agreement provided that Quorum had certain indemnification obligations.  That section states:

> Except as otherwise specifically set forth in any provision of this Agreement or of any Ancillary Agreement, QHC and each of the QHC Subsidiaries shall, to the fullest extent permitted by Law, indemnify, defend and hold harmless each of the CHS Indemnitees from and against all QHC Indemnity Obligations, including, to the fullest extent permitted by Law, the advancement and reimbursement of expenses, including attorneys' fees and costs, incurred with respect to a QHC Indemnity Obligation; provided, however, that the indemnity in this Section 4.02 for QHC Liabilities shall not extend to a past, present or future director, officer, employee or agent of QHC or a QHC Subsidiary to the extent such Person would not be eligible for indemnification under the terms of (i) CHS' certificate of incorporation or bylaws in connection with the matter for which indemnification is sought due to action or inaction by such Person in connection with such matter; or (ii) the directors' and officers' insurance policy of CHS would not cover such Person in connection with the matter for which indemnification is sought due to action or inaction by such Person in connection with such matter. Notwithstanding the foregoing, the indemnification provided for in this Section 4.02 shall exclude, and QHC shall have no responsibility for, Liability arising out of or relating to acts, practices or omissions engaged in after the Distribution Date by CHS or any of its respective Subsidiaries or Affiliates.

Declaration of Gary A. Orseck, dated March 7, 2022 ("Oreck Decl.") [Dkt. No. 62], Ex. 1 at 33-34.

7.      Section 8.02(a) of the Separation Agreement provides in pertinent part: "In the event that a Dispute has not been resolved within thirty (30) days after receipt by a party of an initial notice provided in Section 8.01, or within such longer period of good faith negotiation as the parties may agree to in writing, then, unless the Dispute involves primarily non-monetary relief (in which case such disputes shall be addressed in accordance with Section 8.02(e), such Dispute

shall, upon the written request of a party, be submitted to be finally resolved by binding arbitration pursuant to the then current CPR arbitration commercial arbitration rules of the American Arbitration Association."  Orseck Decl., Ex. 1 at 53.

8.      Section 8.02(e) of the Separation Agreement states:  "If the Dispute involves primarily non-monetary relief, then such Dispute shall not be submitted to arbitration, and either party may commence litigation in the Tennessee Court of Chancery located in Williamson County, Tennessee (or, if such court does not have subject matter jurisdiction thereof, any other federal or state court located in the Middle District of the State of Tennessee with subject matter jurisdiction)."  Orseck Decl., Ex. 1 at 54 (emphasis added).

9.      On June 30, 2020, the Court entered its Findings of Fact, Conclusion of Law, and Order Approving the Debtors' Disclosure Statement For, and Confirming, the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization [Dkt. No. 566] (the "Confirmation Order").  The Confirmation Order confirmed the Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization [Dkt. No. 566-1] (the "Plan").

10.     Article IV.B of the Plan requires the creation of a litigation trust (the "QHC Litigation Trust") and the execution of the Litigation Trust Agreement dated as of July 7, 2020 by and among Quorum and each of its debtor affiliates (the "Litigation Trust Agreement").

11.     Pursuant to the Plan, the Debtors assigned certain claims and causes of action to the QHC Litigation Trust for its investigation and prosecution.  Plan Art. IV.C.3.

12.     Article XI of the Plan provides that this Court retains jurisdiction over matters arising out of or related to the Debtors' chapter 11 cases.  These provisions were specifically approved by the Confirmation Order.  *See* Confirmation Order ¶ 99.  Similarly, Section 2.1(i) of

the Litigation Trust Agreement provides that this Court shall retain jurisdiction over matters arising from or related to the QHC Litigation Trust.

13.    On October 25, 2021, the Trustee commenced this Adversary Proceeding and filed his Complaint (the "Trustee's Complaint") [Dkt. No. 1].  The Trustee has asserted numerous claims against the defendants, including CHS, Cash and Seifert (the defendants who have made the Indemnification Request).

14.    The Trustee's Complaint alleges, among others, several claims for fraudulent transfer under Sections 544 and 548 of the Bankruptcy Code and Tennessee law as to (i) the dividend and transaction fees paid by Quorum to CHS, (ii) releases granted by Quorum to CHS officers (including Cash and Seifert) and (iii) Quorum's indemnification obligations to CHS and CHS officers (including Cash and Seifert).  With respect to the indemnification provision in Section 4.02 of the Separation Agreement, the Trustee has alleged in Counts Seven and Eight that CHS caused Quorum to incur the indemnification obligations under the Separation Agreement, that Quorum received less than reasonably equivalent value, that Quorum was insolvent and that CHS caused Quorum to incur the indemnification obligations with actual intent to hinder, delay and defraud Quorum's creditors.  Accordingly, the Trustee seeks determinations that the indemnification obligations are both constructive and actual fraudulent transfers under Section 544 of the Bankruptcy Code.

15.    On December 15, 2021, counsel for CHS, Cash, and Seifert sent the Indemnification Request to Quorum, purportedly pursuant to Section 4.02 of the Separation Agreement.  Counsel asserted that Quorum was required to make "advancement of the CHS Defendants fees and expenses incurred in defending" against the claims in this Adversary Proceeding and indemnification for "all Losses" incurred in connection with this Adversary

Proceeding, including indemnification for the payments that CHS must make pursuant to its own indemnification obligations to defendants Credit Suisse Securities (USA) LLC and Adam Feinstein. Counsel also asserted that Cash and Seifert are entitled to indemnification under Quorum's By-Laws and Certificate of Incorporation.

16.     Quorum disputes that the three defendants are entitled to any indemnification in connection with this Adversary Proceeding. Accordingly, on February 4, 2022, Quorum advised counsel for CHS, Cash and Seifert that Quorum rejects the Indemnification Request in its entirety.

17.     In connection with the Indemnification Request, Quorum did not exercise a right to commence arbitration for the reasons set forth below. Specifically, the dispute regarding the Indemnification Request is not subject to arbitration under Section 8.02.

18.     In order to resolve the dispute regarding the Indemnification Request, Quorum filed the Motion. Quorum seeks to have the Court issue a declaratory judgment resolving that dispute. *See* the Motion, Ex. A at 11-12.

19.     Defendants have moved to stay the Motion on the ground that the dispute regarding the Indemnification Request is subject to the arbitration provisions of Section 8.02(a) of the Separation Agreement. However, as discussed below, Section 8.02(a) does not compel arbitration here.

## ARGUMENT

### I.     The Dispute Regarding the Indemnification Request Is Not Subject to Arbitration

20.     Section 8.02 of the Separation Agreement specifically provides that "non-monetary" claims are not subject to the arbitration requirements set forth in Section 8.02(a). Defendants do not address this provision in their argument, which is fatal to their motion.

21.     In the proposed complaint attached to the Motion to Intervene, Quorum seeks only a declaratory judgment regarding its contractual rights and obligations with respect to the

62911024;1

indemnification request.  Quorum does not seek any monetary relief.  *See* Motion to Intervene, Ex. A at 11-12.  Defendants do not contend otherwise.  Accordingly, under Section 8.02(a) and (e), defendants do not have a right to demand arbitration and to seek to stay Quorum's involvement in this adversary proceeding pursuant to Rule 24 of the Federal Rules Of Civil Procedure.

22.     Defendants have indirectly attempted to evade the consequences of exclusion of non-monetary relief from arbitration by merely citing to two decisions, without any analysis.  *See* Defendants' Memo at 15.  Those two decisions, however, do not support a determination that the dispute regarding the Indemnification Request is subject to the arbitration provisions terms of Section 8.02(a).

23.     In *Transamerica Occidental Life Insurance Co. v. DiGregorio*, 811 F.2d 1249 (9th Cir. 1987), the court addressed the issue of subject matter jurisdiction.  The issue turned on the nature of the relief being sought under ERISA and whether a declaratory judgment is a form of equitable relief.  *Id*. at 1251.  Defendants specifically quote that observation in the parenthetical attached to the citation of *Transamerica*.  *See* Defendants' Memo at 15.  However, the distinction between legal and equitable relief is not a pertinent question on Quorum's Motion to Intervene.

24.     In *Priority Health Care Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663 (D. Del. 2008), the court addressed the issue of subject matter jurisdiction as it relates to declaratory judgment claims.  *Id*. at 667-69.  Defendants quote a snippet of the court's decision stating that a declaratory judgment should not be used to forum shop or to circumvent dispute resolution procedures.  *See* Defendants' Memo at 15.  However, as noted above, there is no attempt to evade the dispute resolution process set forth in the Separation Agreement because that provision does not apply to this dispute.  *See* this Memo at 8-9, *infra*.  Nor is Quorum engaged in

any effort to forum shop.  The Trustee, and not Quorum, commenced the litigation placing the challenge to the indemnification provisions of the Separation Agreement before this Court .

25.     Section 8.02(a) and (e) distinguish between monetary and non-monetary relief.  In other words, does the claim seek a monetary judgment?  Quorum's declaratory judgment, however, does not seek monetary relief.  Consequently, whether or not a declaratory judgment is based on law or equity begs the question.  The Separation Agreement is very explicit in distinguishing between monetary versus non-monetary, and did not choose to use the different phrases of legal versus equitable – that unambiguous provision must be enforced as written.  *See Trap Rock Industries, Inc. v. Local 825, International Union of Operating Engineers, AFL-CIO*, 982 F.2d 884, 888-89 (3d Cir. 1992); *United Government Security Officers of America, International Union v. Exelon Nuclear Security, LLC*, 24 F. Supp. 3d 460, 465-66 (E.D. Pa. 2014).  In *United Government Security*, the court observed:

> Sometimes an "arbitration provision ... is narrowly crafted," in which case "the presumption of arbitrability [is] inapposite."  And sometimes, alternatively, other language expressly excludes certain issues or categories of grievances from an otherwise broad arbitration clause, in which cases, these precepts demand, the exclusion must be enforced under those same contract principles.

*Id*. at 466 (citations omitted).[1]  That same rule of construction must be applied here with respect to the Separation Agreement's exclusion of non-monetary claims.

26.     Consequently, the only question, which defendants ignore in their briefing,  is whether there is anything in Quorum's proposed complaint that seeks monetary relief.  There is not.  It therefore does not matter whether the requested declarations are at law or in equity for the purposes of Section 8.02.

---

[1] The rules of construction for arbitration clauses are the same under both the Labor Management Relations Act and the FAA.  *United Government Security,* LLC, 24 F. Supp. 3d at 465.

27.     Accordingly, Quorum's request for declaratory judgment is not subject to arbitration, and defendants' Motion to Stay has no basis under the Separation Agreement.

## II.     With Respect to Quorum's Claims, the Bankruptcy Code Overrides the Provisions of the Federal Arbitration Act Requiring Arbitration

28.     Defendants take the position that the indemnification dispute must be resolved by arbitration pursuant to Section 8.02 of the Separation Agreement and the FAA.  Defendants merely cite case law regarding the enforcement of commercial arbitration agreements, but fail to address the intersection of the FAA with the Bankruptcy Code.  As established below, even if the arbitration requirements of Section 8.02 were applicable here, which they are not, this Court is not bound by the FAA because the Bankruptcy Code overrides any obligation to compel arbitration under the circumstances present here.

29.     Section 8.02 of the Separation Agreement provides that, upon the written request of a party, a monetary dispute under the Separation Agreement shall "be submitted to be finally resolved by binding arbitration pursuant to the then current CPR Arbitration Commercial Arbitration Rules of the American Arbitration Association."  Assuming *arguendo* that this provision applies, however, Section 8.02 does not override or trump this Court's jurisdiction under the Bankruptcy Code over the Indemnification Request controversy.

30.     The FAA establishes a "federal policy favoring arbitration."  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983)).  However, this preference for arbitration is not absolute and may be overridden by a contrary congressional command.  *In re APF Co.*, 264 B.R. 344, 361 (Bankr. D. Del. 2001) (quoting *McMahon*, 482 U.S. at 226-27).

62911024;1

31.     Defendants cite to a number of decisions regarding enforcement of arbitration clauses under the FAA.  *See* Defendants' Memo at 13-16.  However, only one of those decisions is pertinent to whether Section 8.02 is enforceable with respect to the claims asserted in Quorum's proposed intervention complaint.   All of the other decisions concern commercial arbitration disputes untethered to the Bankruptcy Code.  The one pertinent cited decision is the Third Circuit decision in *Mintze v. American General Financial Services, Inc.*, 434 F.3d 222 (3d Cir. 2006).  *See* Defendants' Memo at 13.  In *Mintze*, the Third Circuit reversed an order declining to enforce an arbitration clause.  However, contrary to the defendants' assertion, the court did not hold that arbitration clauses were always enforceable in matters involving the Bankruptcy Code and that a court has no authority to deny a stay.  *See* Defendants' Memo at 13.  Rather, in a portion of the decision not cited by defendants, the court stated:  "Where an otherwise applicable arbitration clause exists, a bankruptcy court lacks authority and discretion to deny its enforcement, *unless* the party opposing arbitration can establish Congressional intent, under the *McMahon* standard, to preclude waiver of judicial remedies for the statutory right at issue."  434 F.3d at 231 (emphasis in the original).  Consequently, this Court still needs to determine whether the issues raised by Quorum may be determined by this Court, as opposed to an arbitrator.

32.     Other courts have reached the same conclusion, although the mode of analysis that they employed is different than the test applied by the Third Circuit in *Mintze*.  Nonetheless, given the substance of the inquiry conducted by the Second Circuit and other courts, the analysis of the intersection of the FAA and the Bankruptcy Code is substantively the same as that employed by the Third Circuit.  Namely, all the courts asked whether the claim at issue derives from or is intertwined with claims and rights that emanate from the Bankruptcy Code.  Those non-Third Circuit courts have engaged in a two-part review.

33.    First, the courts determine whether the issue involves a core or non-core proceeding. *In re Anderson*, 884 F.3d 382, 387 (2d Cir. 2018). If the proceeding in question is non-core, then "'bankruptcy courts generally must stay' the proceedings 'in favor of arbitration.'" *Id*. (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 166 (2d Cir. 2000)); *see also APF Co.*, 264 B.R. at 361-62 (if the underlying proceeding involves debtor-derivative, non-core matters, then the bankruptcy court does not have the authority to deny enforcement of the arbitration clause.). If, however, the proceeding is a core proceeding, then "the bankruptcy court is tasked with engaging in a 'particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.'" *Id*. (quoting *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)). If an arbitration would create a "severe conflict" with the purposes of the Bankruptcy Code,[2] then that conflict overrides the FAA's general policy. *Id; see also APF Co.*, 264 B.R. at 362 (the majority view in the Third Circuit is that "bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision provided" there is an inherent conflict between arbitration and the Bankruptcy Code's underlying purposes.).

34.    The Third Circuit has approached the issue slightly differently skipping over the core/non-core distinction and proceeding directly to the question of whether any of the claims at issue are tied to the Bankruptcy Code. In refusing to stay arbitration in *Mintze*, the Third Circuit observed: "With no bankruptcy issue to be decided by the bankruptcy court, we cannot find an inherent conflict between arbitration of *Mintze's* federal and state consumer protection issues and the underlying purpose of the bankruptcy code." 434 F.3d at 231-32. In both *Mintze*, as well as

---

[2] Courts have determined that "bankruptcy courts are more likely to have discretion to refuse to compel arbitration of core bankruptcy matters." *In re Anderson*, 884 F.3d at 388 (quoting *Hill*, 436 F.3d at 108); *see also In re United Companies Financial Corp.*, 241 B.R. 521, 525 (Bankr. D. Del. 1999)("[W]it respect to core matters, the Bankruptcy Court has exclusive jurisdiction which may not be delegated or supplanted by alternative dispute resolution procedures.").

the earlier Third Circuit decision in *Hays & Co. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir. 1989), the claims at issue were non-Bankruptcy Code statutory claims that arose pre-petition. *Id*. at 232. In *Mintze*, the claims asserted by the debtor arose under the Truth in Lending Act and related federal and state consumer protection laws. *Id*. at 226.

35.     Under the non-Third Circuit jurisprudence, if the court does determine that the issues are core, then the court is "tasked with engaging in a particularized inquiry into the nature of the claim and the facts of the specific bankruptcy." *Anderson*, 884 F.3d at 387. Among other things, a court should consider the "goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Id*.

36.     *Homaidan v. SLM Corp.,* 587 B.R. 428 (Bankr. E.D.N.Y. 2018), which addresses the enforceability of an arbitration agreement in the context of the discharge of debts in a chapter 7 proceeding, is instructive. In *Homaidan*, the plaintiff filed a chapter 7 petition, was granted a discharge, and his bankruptcy case was closed. *Id*. at 431. Following the closure of the bankruptcy case, certain entities sought to recover pre-bankruptcy loans from Mr. Homaidan on the premise that the loans were non-dischargeable student loans. *Id*. at 432. After fully repaying the loans, the plaintiff later reopened his bankruptcy case and commenced an adversary proceeding to obtain a determination that certain of his student loans had been discharged and were not exempt from discharge under Section 523(a)(8) of the Bankruptcy Code. *Id*. The bankruptcy court determined that the plaintiff's "allegations are grounded in the determination of whether the debts at issue were discharged in his bankruptcy case, and if so, whether the bankruptcy court's Discharge Order has been violated." *Id*. at 437. The bankruptcy court noted that, "if [it] determines that arbitration would create a 'severe' or 'inherent' conflict with the purposes of the Bankruptcy Code, 'it has

12

discretion to conclude that 'Congress intended to override the [FAA's] general policy favoring the enforcement of arbitration agreements.'" *Id*. at 439 (quoting *Anderson*, 884 F.3d at 387. Therefore, courts "may refuse to compel arbitration where 'resolution of the [disputed] claims directly implicate[s] matters central to the purposes and policies of the Bankruptcy Code.'" *Id*. at 440 (quoting *Hill*, 436 F.3d at 110).

37.    The *Homaidan* decision relied heavily on the Second Circuit's reasoning in *Anderson*.  In *Anderson*, the debtor had filed a chapter 7 bankruptcy petition. *Anderson*, 884 F.3d at 385.  The bankruptcy court subsequently entered a discharge order, and the case was closed. *Id*. Credit One thereafter refused to remove the charge-off notation on the debtor's credit reports. *Id*. The debtor commenced an adversary proceeding, alleging that Credit One's refusal was a violation of the discharge injunction. *Id*.  Credit One unsuccessfully moved to compel arbitration, as the courts held that the dispute could not be submitted to arbitration "because it was a core bankruptcy proceeding that went to the heart of the 'fresh start' guaranteed to debtors under the Bankruptcy Code." *Id.*  To determine whether the enforcement of the arbitration agreement would present an inherent conflict, the Second Circuit engaged in a "particularized inquiry into the nature of the claim and the facts of the specific bankruptcy.  The objectives of the Bankruptcy Code relevant to this inquiry include the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders." *Id*. at 389 (quoting *Hill*, 436 F.3d at 108).  The court concluded that "arbitration of a claim based on an alleged violation of Section 524(a)(2) would "seriously jeopardize a particular core bankruptcy proceeding." *Id*. at 389-90. *Accord In re EPD Investment Co., LLC*, 821 F.3d 1146, 1150 (9th Cir. 2016) (when denying motion to compel arbitration, the court held that fraudulent conveyance, subordination and disallowance

causes of action were core proceedings); *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015) (affirming the bankruptcy court's exercise of discretion to retain jurisdiction over the debtor's claim seeking to declare a loan illegal and void); *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 170 (4th Cir. 2005) (the court declined to enforce an arbitration agreement with respect to an adversary proceeding against an investor and debtor to determine whether the principal's pre-petition cash advances to the debtor were debt or equity); *In re F & T Contractors, Inc.*, 649 F.2d 1229, 1232 (6th Cir. 1981) (the Sixth Circuit held that the "bankruptcy judge did not abuse his discretion in the present case by refusing to submit the contract dispute to arbitration because the claims of other creditors would have been affected by the decision of the arbitration board but those creditors would not have been allowed to participate in the proceeding."); *Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.)*, 390 B.R. 784, 793-95 (S.D.N.Y. 2008) (claims under Section 544 of the Bankruptcy Code are not subject to arbitration, citing favorably to the Third Circuit's decision in *Hays*).

### III.    If Section 8.02 *Arguendo* Requires Arbitration, the Bankruptcy Court Should Not Compel Arbitration of the Indemnification Request

38.    Here, the dispute regarding the Indemnification Request is integrally intertwined with the QHC Litigation Trust's claim for relief under Sections 544 and 548 of the Bankruptcy Code.  *See* Quorum's Motion to Intervene at 11-15; Quorum's Reply Memo at 2-7.  Thus, this Court should engage in a particularized inquiry to determine if enforcement of the arbitration provision would jeopardize the objectives of the Bankruptcy Code.  Here, that inquiry compels the conclusion that the Court should override the arbitration provision if it is otherwise applicable (which, as discussed above, it is not).

39.    Resolution of the dispute regarding the Indemnification Request implicates several core objectives of the Bankruptcy Code.  Enforcement of the arbitration provision would

62911024;1

undermine the goal of the centralized resolution of purely bankruptcy issues. As noted above, the Complaint primarily consists of claims brought under Sections 544 and 548 of the Bankruptcy Code, including the claims for relief that specifically address Quorum's alleged indemnification obligations. Resolving the claims in the Complaint before this Court, but at the same time requiring Quorum to arbitrate the dispute regarding the Indemnification Request, would result in two different, unrelated tribunals resolving intertwined issues.

40.     Enforcement of the arbitration provision will also encroach upon the undisputed power of this Court to enforce its own orders. Through the Confirmation Order, this Court approved the Plan, the Restructuring Transactions and the means for their implementation, including the charge to the QHC Litigation Trust to pursue the claims and causes of action assigned to it. The QHC Litigation Trust's ability to follow through on that task requires the resolution of the Indemnification Request, as granting the Indemnification Request would effectively immunize CHS and the two individuals defendants from liability for the fraudulent transfers that they are alleged to have received.

41.     In the Trustee's Complaint, the Trustee alleged conduct that goes to the core of the Separation Agreement and the conduct of CHS in causing Quorum to incur various obligations, including the obligation to indemnify defendants. *See* the Trustee's Complaint at 44-47. The Trustee proceeds to allege why the indemnification provision constitutes a fraudulent transfer, both constructively and with actual intent – the Trustee alleges that the indemnification provisions were granted without reasonably equivalent value, were not given in good faith and were given with the intent to defraud creditors. *See id*. at 45-46. Accordingly, the Trustee seeks a judgment that the obligations to indemnify defendants be set aside and avoided under Section 544 of the Bankruptcy Code (as well as the laws of Delaware, New York and Tennessee). *See id*. at 45, 47.

62911024;1

42.     By declining to enforce the arbitration provision of the Separation Agreement, this Court will also avoid the possibility of inconsistent decisions. The QHC Litigation Trust has raised the issue of the enforceability of the indemnification provisions in its Complaint. Quorum is now asking the Court to make a determination of the enforceability of the same indemnification provisions. If the arbitration provision is enforced, the Court and the arbitration panel may reach different conclusions regarding the enforceability of the Separation Agreement's indemnification provisions. This potential for inconsistent outcomes can be avoided given this Court's ability to resolve all interrelated matters in a centralized forum.

43.     In sum, the requirements of the FAA do not apply because the Bankruptcy Code supersedes the FAA's requirement that the arbitration provisions of the Separation Agreement (to the extent they are applicable at all, which Quorum disputes) be enforced. As set forth above and in Quorum's papers in support of the Motion to Intervene, resolution of the dispute concerning the Indemnification Request is intertwined with resolution of the QHC Litigation Trust's claims in this adversary proceeding.

## REQUEST FOR ORAL ARGUMENT

44.     Pursuant to Del. Bankr. L.R. 7007-3, Quorum requests oral argument on the Motion to Stay.

## **CONCLUSION**

45.     For the foregoing reasons, defendant's Motion to Stay Pending Arbitration should

be denied in its entirety.

Dated: April 18, 2022
Wilmington, Delaware

Respectfully submitted,

*/s/ David M. Fournier*
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Hercules Plaza, Suite 5100
1313 N. Market Street, P.O. Box 1709
Wilmington, Delaware 19899-1709
|Telephone: (302) 777-6500
Facsimile: (302) 421-8390
E-mail: david.fournier@troutman.com
        kenneth.listwak@troutman.com

-and-

H. Peter Haveles, Jr. *(admitted pro hac vice)*
AKERMAN LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Telephone: (212) 822-2280
Facsimile: (212) 259-8586
E-mail: peter.haveles@akerman.com

*Attorneys for Quorum Health Corporation*

62911024;1