**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref. D.I. 8884, 9299 |

**DEBTORS' OBJECTION TO EMERGENCY MOTION OF PRO-SE CLAIMANT NUMBERS SA-101730 & SA-47539 FOR ENTRY OF AN ORDER PURSUANT TO SECTIONS 105, 1103, 1125, AND 1126 OF THE BANKRUPTCY CODE APPOINTING A PLAN VOTING OMBUDSPERSON AND GRANTING RELATED RELIEF**

Boy Scouts of America (the "BSA") and Delaware BSA, LLC, the non-profit corporations that are debtors and debtors in possession (together, the "Debtors") in the above-captioned chapter 11 cases, hereby file this objection (the "Objection") to the *Emergency Motion of Pro-Se Claimant Numbers SA-101730 & SA-47539 for Entry of an Order Pursuant to Sections 105, 1103, 1125, and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* [D.I. 8884] (the "Motion")[2] filed by Michael Cutler, and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038.

[2] Mr. Cutler also filed the *Notice of Filing U.S. Department of Justice (DOJ) Federal Civil Rights- Disability Rights-Hate Crime-Religious Persecution-Bad Faith-ADA & DOJ Defined Discrimination Violations, Elder Financial Abuse, Bind, Deaf, Aging, Print, Dying, and Child Exploitation Violations. Failure to Provide Qualified Federal Assistance or an Ombudsman. Visual Federal Bankruptcy Court Corruption & Absentee Voter Violations Exist. Present Crimes Against Humanity. USPS Mail Soliciting & Noticing Fraud, Debtors, L.C., Coalition, Charter Orgs., Insurer, TCC, and Omni Complicity. to Unconstitutionally Propose Final Pretrial Order for the Plan Confirmation Hearing* [D.I. 9299] (the "Notice"), alleging, among other things, the failure to appoint an ombudsperson. To the extent applicable, the Debtors request that the Court overrule any relief requested in the Notice.

**PRELIMINARY STATEMENT**

1.      Mr. Cutler's request for a voting ombudsperson is moot.  Both the voting deadline and limited extended voting deadline in these chapter 11 cases have passed.  Even if those deadlines were still open, a voting ombudsperson would not be warranted.  Notably, this Court questioned its own authority to appoint an ombudsperson in connection with a near-identical motion filed by the Official Committee of Tort Claimants (the "TCC") over fourth months ago.  Mr. Cutler does not (and cannot) rely on any specific authority to resolve the Court's prior concerns regarding the appointment of a voting ombudsperson.  Accordingly, the Motion should be denied.

**BACKGROUND**

2.      This Court entered the *Order (I) Approving the Disclosure Statement and the Form and Manner of Notice, (II) Approving Plan Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Approving Form, Manner, and Scope of Confirmation Notices, (V) Establishing Certain Deadlines in Connection with Approval of the Disclosure Statement and Confirmation of the Plan, and (VI) Granting Related Relief* [D.I. 6438] setting an initial deadline to vote to accept or reject the *Modified Fifth Amended Chapter 11 Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC* [D.I. 6429] (as subsequently amended on December 18, 2021 [D.I. 7832] and February 15, 2022 [D.I. 8813], the "Plan") on December 14, 2021, at 4:00 p.m. (ET).  The initial deadline to vote to accept or reject the Plan was subsequently extended to December 28, 2021, at 4:00 p.m. (ET) (the "Initial Voting Deadline").  *See Notice of Extension of Voting Deadline to Accept or Reject Plan to December 28, 2021 at 4:00 p.m. (Eastern Time) and Related Deadlines* [D.I. 7608].

3.      Prior to the Initial Voting Deadline, the TCC filed the *Emergency Motion of the Official Committee of Tort Claimants for Entry of an Order Pursuant to Sections 105, 1103,*

*1125 and 1126 of the Bankruptcy Code Appointing a Plan Voting Ombudsperson and Granting Related Relief* [D.I. 7447] (the "TCC Motion"), similarly requesting this Court appoint a voting ombudsperson to address and minimize possible voter confusion in connection with the Initial Voting Deadline. The Debtors objected to the relief requested in the TCC Motion. *See* D.I. 7467.[3]

4. The Court heard the TCC Motion on November 29, 2021 (the "Hearing"). During the Hearing, the Court addressed its lack of authority to appoint a voting ombudsperson and requested that the TCC modify its request to include specific authority which would permit the Court to appoint a voting ombudsperson. *See* Nov. 29, 2021 Hr'g Tr. at 41:19–25 ("[T]here was nothing in your papers, especially on the model rules point, which was just in a footnote, which tells me that I can get involved, I should get involved, and what [that] involvement should be . . . ."); *see id*. at 44:16–19 ("I need some specific authority on this, and I really don't think it's in your current motion. And, you know, why isn't there going to be a lot of authority on this? Because this doesn't happen."). After the Hearing, the TCC filed the *Modified Emergency Motion of the Official Committee of Tort Claimants Regarding Plan Voting Issues* [D.I. 7601] (the "TCC Modified Motion"), which removed the TCC's request for appointment of a voting ombudsperson. *See* TCC Modified Motion, ¶ 4. The Court denied the TCC Modified Motion. *See* D.I. 7776.

5. On February 9, 2022, after the Initial Voting Deadline passed, the Debtors, the Future Claimants' Representative, the Coalition of Abused Scouts for Justice, the Ad Hoc Committee of Local Councils and the Pfau/Zalkin claimants reached a settlement agreement with the TCC. *See* Eleventh Mediator's Report, D.I. 8772. In connection with this settlement

---

[3]   The Debtors incorporate by reference the arguments set forth in this objection as if fully set forth herein.

agreement, the Court entered the *Order Approving Form and Manner of Notice of Supplemental Disclosure Regarding Plan Modifications* [D.I. 8894], setting a limited extended voting deadline for holders of Class 8 direct abuse claims and Class 9 indirect abuse claims of March 4, 2022, at 4:00 p.m. (ET).  This deadline was subsequently extended to March 7, 2022, at 4:00 p.m. (ET) (the "<u>Limited Extended Voting Deadline</u>").

## OBJECTION

6. The Motion should be denied as moot.  Both the Initial Voting Deadline and Limited Extended Voting Deadline have passed and thus a voting ombudsperson would serve no role.  In the absence of any upcoming voting deadlines, Mr. Cutler's request for a voting ombudsperson is unnecessary.  For this reason alone, the Motion should be denied.

7. Even if the Initial Voting Deadline and Limited Extended Voting Deadline had not already passed, the Motion should still be denied.  This Court indicated that it lacks authority to appoint a voting ombudsperson over four months ago in response to the TCC Motion.  Indeed, the Court explicitly requested that the TCC provide specific authority to support its request to appoint an ombudsperson.  Moreover, the Court recognized that appointment of a voting ombudsperson "doesn't happen."[4]  Nov. 29, 2021 Hr'g Tr. at 44:19.  In response to the Court's request, the TCC filed the TCC Modified Motion, which did not include a request for a voting ombudsperson.  Despite the Court's response to this prior request to appoint a voting ombudsperson, Mr. Cutler filed a near-identical motion seeking the same relief.  Mr. Cutler's

---

[4] The Bankruptcy Code explicitly contemplates the appointment of an ombudsman in certain specified circumstances, such as in consumer privacy and healthcare cases. *See* 11 U.S.C. §§ 332, 333.  If Congress intended to provide for the availability of a voting ombudsman, it knew how to do so. *See, e.g.*, *In re Turner*, 195 B.R. 476, 483 (Bankr. N.D. Ala. 1996) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (citing *BFP v. Resolution Tr. Corp.*, 511 U.S. 531 (1994))).  Yet, nowhere does the Bankruptcy Code mention appointment of a voting ombudsman.  This absence explains Mr. Cutler's failure to cite any precedent in which a bankruptcy court appointed a voting ombudsman, or any authority upon which a bankruptcy court may do so.

basis for the relief requested fares no better. The Motion merely recites certain conclusory statements and lacks any citations to specific authority that would permit the Court to appoint a voting ombudsperson.

## **CONCLUSION**

8. The Debtors respectfully request the Court deny the Motion and grant any such other and further relief as the Court deems just and proper.

Dated: March 30, 2022
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**

*/s/ Tori L. Remington*
Derek C. Abbott (No. 3376)
Andrew R. Remming (No. 5120)
Paige N. Topper (No. 6470)
Tori L. Remington (No. 6901)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Telephone: (302) 658-9200
Email: dabbott@morrisnichols.com
 aremming@morrisnichols.com
 ptopper@morrisnichols.com
 tremington@morrisnichols.com

– and –

**WHITE & CASE LLP**
Jessica C. Lauria (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone: (212) 819-8200
Email: jessica.lauria@whitecase.com

– and –

**WHITE & CASE LLP**
Michael C. Andolina (admitted *pro hac vice*)
Matthew E. Linder (admitted *pro hac vice*)
Laura E. Baccash (admitted *pro hac vice)*
Blair M. Warner (admitted *pro hac vice)*
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 881-5400
Email: mandolina@whitecase.com
 mlinder@whitecase.com
 laura.baccash@whitecase.com
 blair.warner@whitecase.com

ATTORNEYS FOR THE DEBTORS AND
DEBTORS IN POSSESSION