## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **BOY SCOUTS OF AMERICA AND** | § | **Case No. 20-10343 (LSS)** |
| **DELAWARE BSA LLC,** | | |
| | | **JOINTLY ADMINISTERED** |
| **DEBTORS.** | | |

## PRO-SE CLAIMANT NUMBERS SA-▆▆▆ & SA-▆▆▆ MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY PETITION, OR MOTION <u>FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE,</u>

COMES NOW Pro-Se Claimant Creditor in the above-captioned case

("***Pro-Se Claimant Creditor***"), and hereby files its *Motion to Dismiss the*

*Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a*
*Chapter 11 Trustee, and Brief in Support of* (the "***Motion***"), (exhibits to follow...),

pursuant to Sections 102, 1112, 1104 of the Bankruptcy Code, 11

U.S.C.§§101-1532 (the "***Bankruptcy Code***"), based upon Federal Civil and

Disability Rights Violations, Hate Crimes, Religious Persecution, Elder

Financial Abuse, Child Exploitation, Crimes Against Humanity, Mail Fraud,

Bad Faith, Willful Misconduct, Lack of Fair Dealing, Duty, Lack of Due Process,

Fraudulent Concealment, Delayed Discovery, Federal Bankruptcy Fraud, and Mass

Tort Corruption. Failure To Mail Formal Notice of Bar Date or comply with

Bankruptcy Rule 2002. A requirement of Due Process, and 28 U.S.C. 2075.

**The Debtors in these Chapter 11 Cases, together with the last four digits of the Debtors' respective federal tax identification numbers, are as follows: Boy Scouts of America (6300) and Delaware BSA, LLC (4311). The Debtors' mailing address is 1325 West Walnut Hill Lane, Irving, Texas 75038**

**Capitalized Terms and otherwise defined herein shall have the meanings given to them in the Motion To Dismiss The Chapter 11 Bankruptcy Petition, or, Motion For The Appointment Of A Chapter 11 Trustee, And Brief To Support.**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ III- VI

I.    SUMMARY ................................................................................................... 1

II.   JURISDICTION AND VENUE ...................................................................... 3

III.  BACKGROUND FACTS ................................................................................ 3

      A.    The BSA's Stated Purpose for Filing Bankruptcy.                            3

IV.   ARGUMENTS AND AUTHORITIES                                                     4

      A.    The BSAs Bad Faith Requires Dismissal Under 11 U.S.C. § 1112(b) for
            "Cause" and the Court's Inherent Power to Prevent Abuse Under 11 U.S.C. §
            105.                                                                     5-26

      B.    In the Alternative to Dismissal, the Court Should Appoint a Trustee under
            Section 1104 for "Cause" and in the Interest of Creditors.               27

V.    PRAYER AND DISMISSAL ORDER                                                    30

# TABLE OF AUTHORITIES

**Cases**

*Durland v. United States*, 161 U.S. 306 (1896)

*In re Al Copeland Enters., Inc.*, 991 F.2d 233 (5th Cir. 1993)

*In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984)

*In re Alexandra Trust*, 526 B.R. 668, 675 (Bankr. N.D. Tex. 2015)

*In re Am. Coastal Energy*, 399 B.R. 805 (Bankr. S.D. Tex. 2009)

*In re Antelope Techs., Inc.*, 431 Fed. Appx. 272, 273 (5th Cir. 2011)

*In re Art Midwest, Inc.*, No. 04-91225-RFN-11, 2006 Bankr. LEXIS 12 (Bankr. N.D. Tex. Jan. 5, 2006)

*In re Asanda Air II LLC*, 600 B.R. 714 (Bankr. N.D. Ga. 2019)

*In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003)

*In re Brazos Emergency Physicians Ass'n, P.A.*, 471 Fed. Appx. 393 (5th Cir. 2012)

*In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 Bankr. LEXIS 4132 (Bankr. N.D. Tex. Nov. 23, 2010)

*In re Cardwell*, No. 09-43121, 2017 Bankr. LEXIS 1412 (Bankr. E.D. Tex. May 25, 2017)

*In re Cedar Short Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000)

*In re Charles George Land Reclamation Tr.*, 30 B.R. 918 (Bankr. D. Mass. 1983)

*In re Charter First Mtg., Inc.*, 42 B.R. 38 (Bankr. D. Or. 1984)

*In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr. N.D. Tex. 2002)

*In re Draughon Training Inst., Inc.*, 119 B.R. 921 (Bankr. W.D. La. Apr. 10, 1990)

*In re Elmwood Dev. Co.*, 964 F.2d 508 (5th Cir. 1992)

*In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802 (9th Cir. 1991)

*In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122 (Bankr. S.D.N.Y. 2012)

*In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir. 1991)

*Palmer v. Dau*, No. 6:10-cv-248-Orl-19KRS, 2010 U.S. Dist. LEXIS 69329 (M.D. Fla. July 12, 2010)

*Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989)

*Pipkins-Thomas v. United States*, 223 Fed. Appx. 310 (5th Cir. 2007)

*SEC v. Harris*, No. 3:09-CV-1809-B, 2016 U.S. Dist. LEXIS 51708 (N.D. Tex. Apr. 18, 2016)

*United States v. Chaker*, 820 F.3d 204 (5th Cir. 2016)

*United States v. Desantis*, 237 F.3d 607 (6th Cir. 2001)

*United States v. Keane*, 522 F.2d 534 (7th Cir. 1975)

*United States v. Louderman*, 576 F.2d 1383 (9th Cir. 1978)

*United States v. McNeive*, 536 F.2d 1245 (8th Cir. 1976)

*United States v. Spurlin*, 664 F.3d 954 (5th Cir. 2011)

*United States v. Spurlock*, 214 Fed. Appx. 382 (5th Cir. 2007)

*United States v. Van Dyke*, 605 F.2d 220 (6th Cir. 1979)

**Statutes**

11 U.S.C. § 105

11 U.S.C. § 157

11 U.S.C. § 362

11 U.S.C. § 1104

11 U.S.C. § 1112

18 U.S.C. § 152

18 U.S.C. § 15729

28 U.S.C. § 157

28 U.S.C. § 959

28 U.S.C. § 1334

28 U.S.C. § 1406

28 U.S.C. § 1408

28 U.S.C. § 1409

**Other Authorities**

1 J. Moore, A. Vestal & P. Kurland, Moore's Manual, Federal Practice and Procedure, § 7.13[1] (1990)

# I.    <u>SUMMARY</u>

1.     The U.S. Supreme Court and virtually every Federal Circuit, including the Fifth Circuit, have held that companies that forthrightly claim they are solvent cannot manipulate the Bankruptcy Code for an illicit purpose, but rather must file a petition in good faith with a legitimate goal of reorganizing.  This preliminary requirement is necessary to protect the integrity and equity of the bankruptcy courts.  In this case, The Boy Scouts of America ("*BSA*") did not file this bankruptcy for a legitimate goal of reorganization.

2.     Simultaneously with its bankruptcy filing, the BSA released a host of carefully crafted, politically motivated messages, presumably to assuage any concerns from its membership, representing that it is as financially healthy. By its own admission, the BSA filed this bankruptcy solely to escape the civil prosecution of claims by Scouting Victims of Childhood Sexual Abuse. BSA's Executive Management, has among other things, engaged in rampant self-dealing, breached their fiduciary duties, had virtually no internal controls and if the controls interfered with the enrichment of executives, ignored best practices, actively obtained and improperly misspent donor funds, and committed fraud on the public.

3.     As part of this plan, the BSA formed a shell entity in Delaware prior to filing for bankruptcy to manufacture venue, and is asking this Court to assist with its blatant fraud. Rebranding in Texas. However, this bankruptcy cannot achieve the BSA's illicit goal of dissolving in name only in Texas, Delaware or The District of Columbia. Then there is the lofty and burdensome Congressional BSA Charter, they have failed to live upto.  As they bankruptcy court venue shopped. Only to reorganize in Texas again. BSA lacks the requisite approval from the DE, TX, or District Of Columbia Supreme Courts to dissolve, merge into, or consolidate with a foreign nonprofit incorporated in other States.

4.      The BSA further contends that it needs the protections of the bankruptcy court to consolidate litigation. However, the BSA's self-imposed, wasteful, and destructive litigation. Largely stems from claims from BSA's disgraceful Child Abuse to deflect the spotlight off its own malfeasance. This "litigation strategy" has done nothing more than enrich the BSA's counsel and forced the BSA into its latest round of litigation with this bankruptcy. Unfortunately for the BSA, the law does not allow the BSA to enjoy the equitable protections of the bankruptcy courts. To escape Global Child Sexual Abuse and Personal Injury Litigation.

5.      The BSA's acts and omissions mandate the dismissal of this bankruptcy on the grounds that the filing was made in bad faith. It should also be dismissed for cause pursuant to section 1112 of the Bankruptcy Code because it exposes the BSA to bankruptcy fraud under 18 U.S.C. § 157, which proscribes a scheme or artifice to defraud innocent parties with the use of the bankruptcy system.

6.      In the event the Court is not ready to dismiss this bankruptcy, Pro-Se Claimant Creditor requests the Court appoint an Independent Chapter 11 Trustee. The bankruptcy estate is held in trust for the benefit of creditors, and the debtor-in-possession holds fiduciary duties towards the creditors. It is impossible for the current BSA officers and its private counsel to competently or truthfully serve as a fiduciary to this Pro-Se Claimant Creditor (or its other litigation opponents.) In light of the allegations of mismanagement against the BSA and its national executives, and in light of the wasteful and destructive litigation path the BSA has taken. Thus, if dismissal is not appropriate at this time, Pro-Se Claimant Creditor respectfully requests the Court appoint such a Trustee.

## II. JURISDICTION AND VENUE

7.          This Court has jurisdiction over the Bankruptcy Case and Motion pursuant to

28 U.S.C. §§ 157 and 1334.  Debtors assert that venue is proper in this Court pursuant to 28 U.S.C.

§§ 1408 and 1409.  However, as set forth below, Pro-Se Claimant Creditor disputes whether this

Bankruptcy Case is appropriate.  This Motion constitutes a core proceeding pursuant to 28 U.S.C.

§157(b)(2). The Bankruptcy Code and Rules 1017, 2002, 9013, and 9014 of the Federal Rules of

Bankruptcy Procedure.

## III. BACKGROUND FACTS

A.  The BSA's Stated Purpose for Filing Bankruptcy:

8.  Simultaneously with the bankruptcy filings, the BSA's Chief Executive Officer, explained to BSA

Membership. That the BSA's purpose for the bankruptcy was hardly about BSA's financial constraints.

But about Abuse Victims. BSA National knew could include claims against it for fraud, civil conspiracy,

and claims against the BSA Foundation, Other BSA Entities, Local Councils, and Charter Orgs.,

operating as the BSA's alter egos.

The BSA's choice to file a series of litigation, actively endangers the solvency of the Boy Scouts. BSA's Gross Mismanagement, Breach of Fiduciary Duties, Fraud and Misspending. Has spiraled out of control. The timing of this "Pay The Child Scouting Abuse Victim's Litigation" only belies the BSA National's Fraudulent Intent.

9. As the BSA (with the help of its litigation counsel) is adept at doing. This bankruptcy filing was perfectly poised, and upon information and belief, is intended to stall these several, negative actions looming against the BSA.

## IV. ARGUMENTS AND AUTHORITIES

A.  The BSAs Bad Faith Requires Dismissal Under 11 U.S.C. § 1112(b) for "Cause" and the Court's Inherent Power to Prevent Abuse Under 11 U.S.C. § 105.

10.  The BSA's Bad Faith Requires Dismissal Under 11 U.S.C. § 1112(b) for "Cause"

and the Court's Inherent Power to Prevent Abuse Under 11 U.S.C. § 105.

"Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation. A standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."

4

A court "*shall* convert" a Chapter 11 bankruptcy case to Chapter 7 "or dismiss a case… whichever is in the best interests of the creditors and the estate, for cause." Since at least 1986, the Fifth Circuit has held that a bankruptcy filed without "good faith" should be dismissed under the "cause" standard in Section 1112(b).

11.    "[G]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." As the Fifth Circuit has expressly found, "[t]he good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws." Additionally, the good faith standard maintains the integrity of the bankruptcy process by providing equitable bankruptcy relief *only* to debtors with "clean hands."

12.    "Bankruptcy Courts are courts of equity, and a court of equity is enabled to frustrate fraud and work complete justice" with "broad statutory power," including authority to

dismiss an action *sua sponte* when filed in bad faith. With this in mind, the Fifth Circuit has provided necessary guidance on how the bankruptcy court should employ its discretion:

> "The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case."

The totality of the circumstances is generally used to evaluate whether a filing is made in good faith. In any event, a court's determination of bad faith "is a finding of fact reviewed for clear error."

13.     As previously discussed, bad faith is "cause" to dismiss a Chapter 11 case, pursuant to Section 1112. After the movant satisfies the initial burden to make a *prima facie* showing of bad faith, the burden shifts to the bankruptcy petitioner to demonstrate good faith.

6

14.    The Courts have held that "bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal."  Similarly, in *In re Kickapoo Kennels, LLC*, the Southern District of Texas dismissed a bad faith filing, where the debtor operated profitably pre- and post-petition because "[t]here was no financial need" to file the Chapter 11 bankruptcy other than to gain unfair advantage in litigation.  Indeed, "[s]everal courts have dismissed bankruptcy cases based on the fact that the debtor, in filing a chapter 11 petition, was attempting to gain unfair advantage" in existing litigation.  After all, "Congress designed Chapter 11 to give those businesses teetering on the verge of a *fatal financial plummet* an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability."

15.    The Fifth Circuit has also found dismissal appropriate when a filing is guided by litigation tactics.  In *In re Antelope Techs., Inc.*, the Fifth Circuit evaluated a bad faith case where a chapter 11 bankruptcy was initiated by the controlling shareholders of the debtor who had been sued. The bankruptcy court had "found that the petition was filed to gain advantage in the shareholder litigation rather than for a reorganization." The bankruptcy court reasoned that "although [the controlling shareholders] saw an [alleged] opportunity for growth of [Antelope]'s business through recapitalization, [Antelope]'s near-term capital needs were not so urgent as to

cause the filing of a Chapter 11 petition at the time [Antelope]'s board authorized and directed [a controlling shareholder] to file it . . . On appeal, the district court affirmed, and on further appeal, the Fifth Circuit held that "there was no clear error in the finding that the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action."

16.    In the above cases within the Fifth Circuit jurisprudence, nowhere does any court adopt a subjective standard that requires a showing that a debtor intended to misuse a bankruptcy filing.  Rather, Fifth Circuit courts generally look objectively at the primary purposes of a debtor's filing to determine whether it met the requirements of a good faith standard.

17.    The Third Circuit's approach to dealing with petitions filed by solvent companies seeking to gain advantages in ongoing litigation is consistent with that of the Fifth Circuit.  In the seminal case of *In re SGL Carbon Corporation*, the Third Circuit (in adopting a good faith standard) carefully analyzed the appropriateness of a dismissal in a scenario identical to that of the BSAs, whether "the Chapter 11 petition filed by a financially healthy company in the face of potentially significant civil antitrust liability complies with the requirements of the Bankruptcy Code."  In *SGL Carbon*, a myriad of anti-trust lawsuits were filed against the debtor.  A year later, the debtor filed what appeared to be a pre-planned bankruptcy, wherein a plan and

disclosure statement were filed on the same day of its voluntary Chapter 11 petition. In its

disclosure statement, the debtor identified the anti-trust litigation as the only factor leading to

the Chapter 11 filing. A day after its petition date, the debtor amplified its disclosure through a

press release publicly stating that:

- "Chapter 11 protection provides the most effective and efficient means for resolving the civil antitrust claims";

- "SGL Carbon is financially healthy"; and

- "[B]ecause certain plaintiffs continue to make excessive and unreasonable demands, SGL CARBON Corporation believes the prospects of ever reaching a commercially practicable settlement with them are remote."

Contemporaneously, the chairman of the debtor's German parent company proclaimed to

securities analysts—*not dissimilar to major donors or sponsors of the BSA*—that the debtor was

"financially healthier than before" and the filing had nothing to do with "serious insolvency or

credit problems."

18.     Within a month after the debtor filed, the official committee of unsecured creditors,

comprised primarily of plaintiffs in the anti-trust suits, filed a motion to dismiss the bankruptcy on

bad faith grounds.  Within two months after the filing, the presiding district court conducted a

hearing on the dismissal, wherein it found—based solely on documentary and deposition testimony

and, significantly, without applying a good faith filing standard—that "the petition furthered the

purpose of Chapter 11 because plaintiffs' litigation was imperiling SGL Carbon's operation by

distracting its management, was potentially ruinous and could eventually force the company out of business."

19.    On appeal, the Third Circuit first noted that the district court "made no findings that SGL Carbon filed for bankruptcy for reasons other than to improve its negotiating position with plaintiffs." Following precedent from the First, Second, Fourth, Fifth, Sixth, Eighth, and Ninth Circuits, the Third Circuit adopted the good faith standard and reasoned that:

> The requisite fact intensive inquiry requires determining where SGL Carbon's petition falls along the spectrum ranging from the clearly acceptable to the patently abusive. We first review the District Court's findings of fact and then examine the totality of facts and circumstances to determine whether they support a finding of good faith.

20.    Notwithstanding the discretionary standard of review and based on the circumstances of the filing, the Third Circuit rejected the excuse of the debtor (and findings by the district court) that: (a) "'the anti-trust litigation posed a serious threat to [the debtor's] continued operations'" and (b) "the [anti-trust] litigation might result in a judgment that could cause the company 'financial and operational ruin.'" Instead, Third Circuit found that:

> Whether or not SGL Carbon faces a potentially crippling antitrust judgment, it is incorrect to conclude it had to file when it did. As noted, **SGL Carbon faces no immediate financial difficulty**. All the evidence shows that management repeatedly asserted **the company was financially healthy** at the time of the filing. Although the District Court believed the litigation might result in a judgment causing "financial and operational ruin" we believe that on the facts here, that assessment was premature. A Chapter 11 petition would impose an automatic stay on all efforts to collect the judgment and would allow the company the exclusive right to formulate a reorganization plan under which the amount of the judgment could be adjusted to allow the company to reorganize. SGL Carbon has offered no evidence it could not effectively use those protections as the prospect of such a judgment

became imminent. The District Court's finding that the petition had to be filed at that particular time to avoid financial ruin and therefore was made in good faith is ***clearly contradicted by the evidence***.

21. In the end, based on objective factors, the Third Circuit held the debtor did not

file for valid reorganization purposes, but in the hopes that a "financially solvent compan[y] [could] rapidly conclude litigation to enable a continuation of their business." And, despite the debtor's pretextual excuses, the Court held that "[t]he mere possibility of a future need to file, without more, does not establish that a petition was filed in 'good faith.'" The Court followed the same reasoning in the *Mirant* case.

22.      The Eight Circuit similarly has found that surrounding circumstances, as evidenced by public announcements, effectively demonstrate a debtor's lack of good faith. In *Cedar Shore*, a representative of the debtor "had publicly declared that the business was doing well and that the corporation was poised to turn a profit." The Eighth Circuit, in affirming the dismissal of the debtor's bankruptcy petition on bad faith grounds, held that the "primary motivation for filing bankruptcy was to dispose of the [pending] lawsuit," evident by the fact the debtor "was not in dire financial straits."

23.

### *The BSA Filed as a Litigation Tactic*

Ignoring the guidance provided by *Antelope Techs., SGL Carbon*, and *Cedar Shore*, when BSA filed the Bankruptcy Case. The BSA's leader and top executive publicly explained that BSA is **not insolven**t.

24.    As recited to the BSA members, unequivocally explained that the purpose for the restructuring was not because of the BSA's imaginary financial "Donor Rich" difficulties, but instead to ***escape Child Abuse scrutiny and legal accountability***. Just like the debtor's president in *SGL Carbon*, In the same breath, he assured the BSA members that its business would continue uninterrupted—*i.e.*, any "distraction" would not negatively impact the BSA's operations.

25.    Much like *SGL Carbon*, the BSA has substantial net assets, is current on all obligations, and has not defaulted. The BSA is not using the majority of it's JPMORGAN Credit-Line either.

26.    In representations to this Court the BSA asserted that "based on litigation," the BSA was comfortable with being able to pay creditors "in full," *i.e.*, the BSA is not currently under, and does not foresee being under, any financial constraint or inability to pay creditors—even with all of the expensive litigation.

27.    BSA formulated, planned, and executed these volutary bankruptcy filings and related public statements as part of its litigation plan. Indeed, the BSA in strikingly similar fashion to the debtor *SGL Carbon*. The BSA admitted its reason for its Chapter 11, was to avoid thousands of cases of Childhood Scouting Sexual Abuse Litigation.

28.   The BSA made its position even clearer when it provided the two following arguments in support of its bankruptcy filing

- The BSA Contends with Voluminous, Overlapping Litigation.
- The BSA Will Utilize Chapter 11 To Resolve All Pending Claims.

29.   The BSA has proclaimed. It seeks to avail itself of the protections of the Bankruptcy Code in order to continue its efforts to reduce operating costs and to address the ever-increasing litigation being filed against the BSA. Which we now know, is "Texas Sized Hogwash."

30.   But, the BSA's transparent motives are best revealed in press releases issued Pre and Post bankruptcy filing.

31.    In any event, whichever different BSA statement the Court ultimately chooses as the basis of its ruling, "obtaining a more convenient forum in litigation, standing alone, is not a good faith reason for filing a bankruptcy petition." As the Eighth and Third Circuits would say, the BSA did not file for "valid reorganization of [a] financially troubled business" but solely to "rapidly conclude litigation to enable a continuation of their business" through another forum:

> The plan aims to streamline costs and expenses, proceed with pending litigation in a coordinated and structured manner, and realize many financial and strategic advantages.

> The BSA is expected to emerge from these proceedings within the next six months. Many doubt that.

32. The attempt to gain unfair advantage in litigation is *prima facie* bad faith.

Considering the purpose of Chapter 11 is "to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again." The BSA's attempt to evade its contractual obligations and legal liability makes a mockery of the bankruptcy system. Just as debtor in *SGL Carbon*, the BSA's (a) $1 Billion plus net worth, (b) confirmation of financial health, and (c) attempts at forum shopping and obtaining leverage in litigation merit dismissal. Because the BSA is seeking "to achieve objectives outside the legitimate scope of the bankruptcy laws," *i.e.*, solely tactical advantage in litigation. The BSA is operating in bad faith, which <u>requires</u> dismissal.

### *The BSA Is Violating 28 U.S.C. § 959*

33.   This case should also be dismissed because the BSA is attempting to violate the State Supreme Court's approval to dissolve or merge into or consolidate with a foreign nonprofit incorporated in another state. Pursuant to 28 U.S.C. § 959, a trustee or debtor in possession "shall manage and operate" property of the bankruptcy estate "according to the requirements of the valid laws of the State in which such property is located." Stated differently, "a bankruptcy petition is not a Grant of Immunity,"

and a trustee or debtor-in-possession must comply with state law before obtaining the final relief sought through bankruptcy. "Congress did not intend for the Bankruptcy Code to pre-empt all State Laws."

34.    State   Attorney   General's   Require   Permission   before   a   non-profit organization can dissolve. For Example: New York Law requires businesses to obtain NYAG approval or N.Y. Supreme Court approval to merge or consolidate with a foreign entity. Yet, the BSA's strategy in this bankruptcy is transparent, if not clearly admitted.  It has publicly stated that it "expect[s] to emerge from these proceedings within the next six months" by illegally dissolving in Delaware, Texas, and The District of Columbia without any States Attorney General's Permission and Reorganizing again in Texas.  Presumably, the BSA also wants this Court to bless the transfer of its assets from various parts of the United States and World to Texas. In the interest of creditors—another clear violation of State Law. Stated differently, the very relief that the BSA is seeking through this Mass Tort Chapter 11 (*i.e.*, reorganization in Texas without the approval of the State of Delaware, Texas, and The District of Columbia. May not be permitted under the law and is further evidence of bad faith.

35.     Regardless of the BSA's non-profit status, courts have repeatedly held that a debtor in bankruptcy must comply with applicable State Law. Compliance with 28 U.S.C. § 959 focuses on the pre-petition and post-petition obligations of the debtor. In *Ky. Emple. Ret. Sys. v. Seven Cntys. Servs., Inc.*, the Sixth Circuit held that, pursuant to 28 U.S.C. § 959, a nonprofit debtor is required to comply with Kentucky law post-petition and continue to pay contributions to the Kentucky Employees Retirement System.

36.     Similarly, in *In re Draughon Training Institute, Inc.*, the Bankruptcy Court upheld the Texas Education Association's denial of the debtor's certificate of approval—which denial prevented the debtor from continuing to accept and enroll students—on grounds that the debtor did not have a proper refunding policy in place and had questionable financial soundness. In denying the debtor's requested relief of enjoining the Association from restraining the debtor's student enrollment. The *Draughon* court reasoned that, (a) pursuant to 28 U.S.C. § 959, "[f]ederal bankruptcy law is not designed to displace valid state and local law that is not in conflict" and (b) "[c]onsumer protection is a valid exercise of police and regulatory power for purposes of the [s]ection 362(b)(4) exemption from the automatic stay."

18

37.     Other courts have similarly found that noncompliance with applicable state law, and regulations constitutes grounds for dismissal. Here, the BSA does not even try to hide the fact. That it is attempting to circumvent, State Court Childhood Scouting Sexual Abuse Cases. This Tragic Delaware Case is The United States Flag Waving Example. Of what happens when decades of Child Sexual Scouting Abuse Cases. Publically metastasize inside an embarrassed, and disgraced Falsely Celebrated Washington D.C. Congressional Charter. With venting "The Pedophillia Cancer of The National Spleen." Some Organs we can live without, once gangrene sets in. Denial of The Pedophilia Epidemic within the Local Councils, Churches, Civic and Charter Organizations. Has Completely Shocked The World. It has even infected The National Headquarters Boy Scouts of America. Sending Sexual Deviate BSA Executives to Prison.

### *The BSA's Use of This Bankruptcy Constitutes Bankruptcy Fraud.*

38.     In using this bankruptcy to accomplish their ever changing Chapter 11 Plan. BSA has committed bankruptcy fraud under 18 U.S.C. § 157. This section provides, in relevant part that:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title, shall be fined under this title, imprisoned not more than 5 years, or both.

39.    "In Bankruptcy Court, honesty is so important that bankruptcy fraud is punishable as a crime under 18 U.S.C. § 157. "The statute [18 U.S.C. § 157] makes the crime complete upon the filing of the bankruptcy petition when the filing is accompanied by the other two defined circumstances." Success of the scheme is not an element of the crime.

40.    The statute is intended to be interpreted broadly. Under the predecessor to this statute, which is instrumental, courts held that the "scheme to defraud" is not defined according to technical standards. Rather, such standard is the "reflection of moral uprightness, fundamental honesty, fair play, and right dealing in general and business life" of society's members. It is therefore "not necessary that scheme be fraudulent on its face, but the scheme must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Indeed, "[t]he Supreme Court [has] recognized that the definition of 'scheme or artifice to defraud' is not to be limited to common law concepts of fraud and false pretenses."

41.    Here, the intent to defraud can and should be derived from the circumstances surrounding the BSA's affairs. Since the BSA, like all non-profits, seeks to voluntarily obtain funds from millions of unsuspecting consumers, the BSA's management are well aware that they need to comply with the laws governing its affairs, including its own bylaws. These laws and

bylaws are intended to protect consumers, and when the BSA chose Delaware, Texas, and The District of Columbia as its home jurisdiction. There lies the significant problem. BSA doesn't seem to know where "Home Is." Following such regulations ensures to the members and donors of BSA that the organization is legitimate, and uses their funds primarily to advance the BSA's mission.

42.    The scheme or artifice is exposed through the BSA's litigation tactic of filing this bankruptcy. Without requoting the BSA's various representations to this Court and to the public. Including its bankruptcy counsel's statements, during hearings before this Court. The BSA clearly stated it is not insolvent, and is only creating self-inflicted financial hardship. It filed to streamline litigation, and avoid the State Child Sexual Abuse Litigation. The term "Melting Ice Cube," is often used by BSA's Counsel. Which is not insolvency, by a long ways. The scheme or artifice is exposed by the fact. That the BSA is using the equitable relief of bankruptcy to do what it is otherwise prohibited from doing—dissolving without State Supreme Court or Attorney General Permission. This needs to be closely examined. The scheme or artifice is exposed by the BSA situating this Bankruptcy Case, outside of Texas . When so often it claims The District of Columbia, as its base of origin. Based on its Delaware Shell Company formation, all Creditors are really dealing with a Spoiled Dysfunctional Non-Profit Company.

43.     On information and belief, DELAWARE BSA LLC, does not have meaningful bills or debts. DELAWARE BSA LLC, does not have its own place of business, and DELAWARE BSA LLC does not have legitimate employees. Which begs several questions, as to why BSA is using a Delaware Shell Company to trot through this Delaware Federal Chapter 11. Using them as a very thin shield, based on the bankruptcy fraud that has been committed. Many of BSA's Entities were not mentioned in the main critical bankruptcy filing. Oddly supported by scant disclosures. Posted on a creditor matrix comprised solely as a "mere shell, without substance." Formed as a fake, and fraud upon this Court, and the BSA's creditors. Solely to promote the BSA's own interests, in a manner not intended by Chapter 11.

44.     Yet, it was DELAWARE BSA LLC., that led the way in this Bankruptcy Case. By filing a bare bones petition first. Followed by the BSA National. We can assume State Judges in each BSA Child Sexual Abuse Cases, would like to clear their Pending BSA Sexual Abuse Cases also. But the BSA elected to file first day motions for both cases in the BSA case. Even though it was likely aware that this Court's internal rules require the first filed DELAWARE BSA LLC—to govern any first day pleadings and joint consolidation. While hoping DELAWARE BSA LLC existence. Was critical to venue being created for this filing, the BSA represented to the Court. That it naturally wanted to file in the BSA case also, because no one knew DELAWARE BSA LLC. Given the timing and location of its formation, the lack of assets, employees and operations, and the minimal disclosures. One cannot escape the conclusion that DELAWARE BSA LLC, and this bankruptcy filings. Are part of a larger scheme, to break the law...

45.    In *In re Alexandra Trust*, this Court found the debtor's stated purpose of consolidating litigation coupled with the fact that it had "no operations, employees, or income" clearly demonstrated the petition was filed as a litigation tactic. Which constitutes "cause" for dismissal. The Court should repeat its finding in this case.

46.    The BSA's scheme is apparent: First move the Shell Headquarters from Texas to Delaware. Using the now closed Boy Scout Store, in Wilmington, DE. Then use the Store Manager, as the apparently Resident Agent. Next through bankruptcy, form a fake organization. Through which it can attempt to obtain jurisdiction, of this Court. The BSA even admits as much. When it attempted to "streamline" its litigation, but when parties objected. It chose to file this Chapter 11 Mass Tort Bankruptcy:

47. The BSA's decision to incorporate bankruptcy, into its litigation scheme. Is when it

triggered potential ramifications for bankruptcy fraud under 28 U.S.C. § 157.  When it actually pulled the trigger and filed on the Petition Date, is when the Violation of Section 157(a)(1) was Complete. As in *Pottorff*, there is "sufficient basis to dismiss the petition for a finding of bad faith. For filing the petition to gain a litigation advantage, and for being Solvent." Those acting in concert with the BSA (*i.e.*, the Financial Advisor and the BSA's Bankruptcy Counsel and Co-Counsel) are likewise liable for this Bankruptcy Fraud.

### *The BSA's Venue Shopping of This Case Is A Sign of Bad Faith.*

48.      As discussed above, Delaware BSA LLC, is a fake entity that the BSA...

formed prior. To manufacture venue for this bankruptcy.  Inferred from the lack of any real disclosure. Delaware BSA LLC, has no real assets, no needed officers, no needed employees, no needed governance documents, no real operations, no office, no required bank accounts. Notably, Bankruptcy Rule 1007(d) and the clear instructions on Form 204 spell out such details.

In addition to the BSA's filing activities that conflict with well-settled internal rules of this Court. The BSA has also failed to provide *any truthful* explanation for why this shell corporation, formed prior, needed to file bankruptcy at all. Let alone in connection with the BSA. Indeed, the circumstances surrounding DELAWARE BSA LLC's "existence" remain hidden. But most know it was simply to commit fraud, as BSA is quite "Solvent."

49.    Indeed, the BSA, which has been in existence since early 1900's. Had no legitimate purpose for forming a new shell in Delaware. The sole purpose for forming Delaware BSA LLC, was to circumvent the venue statute, 28 U.S.C. § 1408, and allow the BSA to avail itself of this Court's jurisdiction. This flaunting of bankruptcy law further warrants dismissal.

50.    If the BSA's tactics become the acceptable method of manufacturing venue. The bankruptcy venue statute, would be rendered illusory. Any company could simply file wherever it wanted, in any jurisdiction of the United States. By following the BSA's Straw-Man Strategy.

51.    Bankruptcy Rule 1014(a)(2) expressly authorizes a court to dismiss a case filed in an improper venue, and 28 U.S.C. §1406(a) mandates dismissal. If a transfer is not otherwise in the interest of justice. Here, DELAWARE BSA LLC's petition was arguably filed falsely. Even cloaked with Delaware in the title. Which is a "Wreck On A Wreck," ploy. However, Courts have expressly dismissed bankruptcy cases, on these type of bad faith grounds. When forum shopping tactics have been employed. In *In re Zed, Inc.*, a bankruptcy court dismissed a bad faith filing where the debtor:

- was formed just prior to filing for bankruptcy;

- did not need and have use of a bank account, nor has the debtor ever had any money whatever;

- didn't really have employees;

- seldom paid bills or debts;

- did not have its own place of business; and

- was a mere shell, without substance and little capital or whatever had been committed to the corporation for minor payment of creditors.

In other words, "[t]he principals of the corporation ha[d] absolutely nothing at risk." Accordingly, in dismissing the case on bad faith grounds, the court held that the "[f]ormation of the debtor was a sham and a fraud upon [the creditor and the court]" and "[t]he debtor and its principals have abused the jurisdiction of this Court." By using it to promote their own interests "in a manner not intended by Congress."

52.    In *In re Hall, Bayoutree Assocs., Ltd.*, the Ninth Circuit similarly affirmed the dismissal of an improperly filed case on bad faith grounds. Where a Texas limited partnership, whose principal asset was an apartment complex in Houston, Texas. Filed for Chapter 11 relief in the District of Arizona.  The court held that "[a]lthough dismissal of an action for improper venue is a harsh remedy. Dismissal is proper where the filing in an improper forum evidences bad faith."

53.    Here, dismissal is warranted. Because the BSA could not have filed bankruptcy in this jurisdiction, without the use of a shell company formed in anticipation of the filing.  Not only does the shell, need no reorganization. Being it serves no other purpose than to permit this filing to appear legitimate.  Whether the Court should dismiss on this fact alone, is within the Court's discretion.  However, when coupled with the BSA's other significant acts of bad faith, and fraud. The Court clearly has substantial justification to dismiss this case.

**B.  In the Alternative to Dismissal, the Court Should Appoint a Trustee under Section 1104 for "Cause" and in the Interest of Creditors.**

In the alternative to dismissal, an independent trustee should be appointed to administer this case.  Bankruptcy Code Section 1104(a) sets forth the circumstances under which the court *must* order the appointment of a Chapter 11 Trustee:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States Trustee, and after notice and a hearing, the court shall order the appointment of a Trustee:

(1) For cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause… or

(2) If such appointment is in the interests of creditors, any equity security holders, and other interests of the estate

(b) Based upon the evidence presented herein, exposing the BSA's bad faith intent for initiating this Bankruptcy Case, Debtors and their management have acted fraudulently and dishonestly.  Therefore, "cause" exists for the appointment of a Trustee and the Court must order such appointment.

54.     Furthermore, a paramount duty of a Trustee in a bankruptcy case is to act on behalf of the Bankruptcy Estate.  That is, for the benefit of all the creditors of the estate, and to administer the assets and business of the estate in the interest of those creditors.  "A debtor in possession, like a trustee, is a fiduciary. Holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." The Bankruptcy Code provides this vehicle

for appointment of a trustee when the debtor's principals fail to fulfill those rigorous responsibilities. The standard for appointment of a Chapter 11 Trustee under section 1104(a)(2) is flexible.

55.    The appointment of a trustee under Section 1104(a)(2) is appropriate in this case. Because of the BSA's rampant mismanagement, corruption, by inside executives and board members, fraud, breaches of fiduciary duties, and vexatious litigation. Visited upon all The Sexual Abused Children Of Scouting, with Claims and State Cases now Pending,  Critically, those misdeeds were performed by, at the direction of, or with the approval of the BSA's leadership for more than 75 year.  The BSA cannot realistically carry out the fiduciary duties of a debtor-in-possession, toward creditors. When both the BSA and BSA CEO Mosby face Opt-Out Liability for those misdeeds.  Also important is that those same misdeeds affect the bankruptcy estate. That the debtor-in-possession is required to maintain for the benefit of creditors. Indeed, it is likely that litigants against the BSA, are the largest stakeholders in this Bankruptcy Case. Considering the highly contested nature of the pending lawsuits involving the BSA. Plus the allegations of mismanagement, dishonesty, and

breaches of numerous obligations. It is unfathomable that under current management, the BSA can now serve as a fiduciary to those litigant-creditors.

56.    A trustee also is needed to investigate and preserve valid Abuse Claims against current and/or former management for the benefit of creditors.  The bankruptcy estate clearly has an interest in asserting those claims, once confirmed.  Considering that the mismanagement, breaches of fiduciary duty, and fraud that has apparently gone unchecked for decades. (Which is one of the issues giving rise to the various lawsuits). It is clear that the Court cannot rely upon the BSA's current management to properly oversee these bankruptcy claims.  This is especially so, when taking into account the allegations against raised by BSA executives, and board members. In addition to outside litigants.

57.    Thus, assuming the BSA is even entitled to the equitable relief bankruptcy provides, and that it even needs to reorganize at all. An independent fiduciary appointed by the Court is the best person to lead this bankruptcy, report to the Court and creditors and investigate as necessary. The severity and corroboration of the allegations against the BSA's Management in the various lawsuits, and the evidence presented in support thereof. Have demonstrated that the

BSA's Management is entrenched and cannot realistically pursue a path moving forward in the best interest of the BSA's Creditors, Donors, Partners, and Other Interests. They have not done so yet. Doing so would be against their own personal interests. This Conflict Is Incurable.

58.     Thus, allowing the BSA to remain in possession poses an unjustifiable risk to the Creditors and to The Public. If the BSA expects to promote its cause and survive, changes must be made. But that is not the intention of the BSA's current management, and advisors. It is clear that they are using this bankruptcy instead as a tactic. To cause delay, and confusion in numerous lawsuits in numerous forums. This bankruptcy should be dismissed for its illegitimacy. But, to the extent this Court is inclined to let it proceed, the Court should appoint an Independent Chapter 11 Trustee to oversee The BSA.

## V.    PRAYER

59.  This Pro-Se Claimant Creditor concludes, (1) that the Bankruptcy Case should be dismissed as to the BSA and DELAWARE BSA LLC. Because the BSA is clearly using the equitable remedy of bankruptcy as a litigation tactic; (2) the BSA is attempting to circumvent statutory requirements for dissolution; and (3) the BSA (and DELAWARE BSA LLC., is not insolvent nor experiencing financial hardship.

60.  In the alternative to dismissal, Pro-Se Claimant Creditor further concludes. That the BSA cannot serve as the debtor-in-possession. Because The BSA is unable to manage the estate, in the best interest of its creditors. In compliance with its fiduciary duties as evidenced by (1) the allegations and evidence against the BSA. In the various underlying cases concerning the BSA, and its executives' mismanagement and (2) BSA management is subjecting all BSA Members and BSA Delaware Chapter 11 Creditors to this costly manipulation tactic of the Federal Bankruptcy System.

61. WHEREFORE, Pro-Se Claimant Creditor respectfully requests the Court enter an Order, substantially in the form attached hereto as the Dismissal Exhibit, dismissing the Bankruptcy Case based upon a finding of bad faith under 11 U.S.C. § 1112(b), and/or based upon a finding of fraud in violation of 11 U.S.C. § 157; or in the alternative, authorizing the appointment of a chapter 11 trustee. The Court should also grant such other and further relief to which Pro-Se Claimant Creditor may be entitled.

Respectfully Submitted,

Date: March 30, 2022

*/s/ Michael Cutler*

PRO-SE CLAIMANT NUMBERS SA-█████& SA-█████

mrctlr@protonmail.com

31

**DISMISSAL - ORDER**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **BOY SCOUTS OF AMERICA** | | |
| **AND DELAWARE BSA LLC,** | | **Case No. 20-10343 (LSS)** |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |
| | § | |

### ORDER ON MOTION TO DISMISS CHAPTER 11 BANKRUPTCY PETITION

COMES NOW Pro-Se Claimant Creditor SA-101730 & SA-47539's *Motion to Dismiss Chapter 11 Bankruptcy Petition* (the "*Motion*"). Having reviewed the Motion and having heard the statements and evidence offered in support of the relief requested therein at a hearing before this Court, the Court determines that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein. Accordingly, it is **HEREBY ORDERED**:

1.  The relief requested in the Motion is **GRANTED** as set forth herein.

2.  The above-captioned case is **DISMISSED WITHOUT PREJUDICE.**

3.  The terms and conditions of this **Order** shall be immediately and enforceable upon its entry.

Dated: _____, 2022

_____
**UNITED STATES BANKRUPTCY JUDGE**

Wilmington, Delaware